**UNITED STATES of America,
Plaintiff,**

v.

**Louis CANGELOSE, also known as Louis Mallo, Louie Zicarelli, and Dominic J. Cervello, Defendants.**

**Crim. No. 64–Cr–3002.**

United States District Court
N. D. Iowa, W. D.
June 12, 1964.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, for plaintiff.

James L. Williams, Kansas City, Mo., Frank J. Margolin, Sioux City, Iowa, James P. Quinn, Kansas City, Mo., Warren R. Stienstra, Sioux City, Iowa, for defendants.

HANSON, District Judge.

This is a ruling on a motion to suppress certain evidence. The petitioners were in South Dakota hunting pheasants near Brookings. Louis Cangelose is well known to the Government agents and is under constant surveillance. This is not true of Louie Zicarelli and Dominic J. Cervello. When Cangelose and his two companions left Kansas City they were followed to Brookings, South Dakota.

Other agents were notified who then came to South Dakota. A possibility of catching Cangelose in a violation of Title 15, Section 902(e) was contemplated. This section states in part that: "It shall be unlawful for any person * * * who has been convicted of a crime punishable by imprisonment for a term exceeding one year * * * transport or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition."

The petitioners were kept under surveillance while at Brookings, South Dakota. When the petitioners checked out of their motel at Brookings at the conclusion of their hunting trip, they were watched by officers in a car proceeding in front of them and by officers in a car following them until petitioners crossed into Iowa. At that time, they were stopped, arrested, and searched. It does appear that in the heavy traffic around Sioux Falls, South Dakota, the officers lost track of the petitioners for some time but relocated them again on U. S. Highway No. 29 going south. The officers were in constant radio communication with each other and sheriffs' offices in the vicinity. Brookings is about 140 to 150 miles mostly north of Sioux City, Iowa, where the petitioners were stopped.

The officers who searched and arrested the petitioners had neither arrest nor search warrants.

Louis Cangelose was indicted under Section 902(e). Louie Zicarelli was indicted under Section 902(e), Title 15, and Section 2, Title 18. Dominic J. Cervello was indicted under Section 902(g).

The automobile in which the petitioners were riding was being operated by Cervello. It was owned by Cangelose's wife. At the time the petitioners were stopped and searched at Sioux City, this car was searched and six shotguns were found. The petitioners prayed that all property seized through the search be returned, that all information, memoranda, data, evidence, and exhibits obtained through or by reason of the search and seizure be suppressed, and that the United States District Attorney and agents be prohibited from offering any such evidence at the trial.

The question here is whether under all the circumstances the search and seizure was reasonable or unreasonable. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. Since Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, searches without a warrant have been justified by being incident to a lawful arrest. There need not be a warrant for arrest if the arrest is otherwise lawful. Ker v. California, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726. The question as to whether the arrest must precede the search to make the search incidental and reasonable was raised and left unanswered in Ker v. California, supra, 374 U.S. p. 43, 83 S.Ct. 1623. The answer to this question is important in this case.

Mr. Piper, one of the Government agents, testified in part on direct examination as follows:

"Q    Continue to tell the Commissioner what you observed after the gentlemen got to Brookings?

"A    They loaded all their belongings including the four shotguns and cases into the Pontiac and they went to the Brookings Cafe and they had breakfast, I assume. We kept the car under surveillance. I then followed the car south out of Brookings, South Dakota on U.S. 77 through Sioux Falls to Interstate 29; and about four miles north of the Iowa State line I passed the vehicle, proceeded south to a road block which was set up approximately one half mile south of the South Dakota State line in Iowa where I stopped the vehicle.

"MR. QUINN: Excuse me for interrupting.

(Off the record discussion.)

"THE COMMISSIONER: For the record it is stipulated between counsel that these matters will be consolidated.

"MR. QUINN: Or—

"THE COMMISSIONER: Heard at the same time, pardon me.

"MR. GOLDBLATT: Yes.

"THE COMMISSIONER: And that the testimony so far given by Mr. Piper insofar as it in any way affects the other parties will be testimony as to that.

"Q I believe you were testifying as to having arrived at the road block, Mr. Piper. Before you continue on that line I would like to ask you to go back now because of the recent stipulation and look around this room to see if you can identify the other two men you were referring to?

"A Mr. Cangelose's associates were Dominic Cervello and Louie Zicarelli.

"Q And where in the room is Dominic Cervello?

"A Mr. Cervello is sitting next to Mr. Goldblatt on my left, and Mr. Zicarelli is to my immediate rear.

"Q Sitting on the right of Mr. Cangelose?

"A That's correct.

"Q And when you referred in your prior testimony to the companions of Mr. Cangelose, you were at all times referring to the two gentlemen you have just identified?

"A That's correct. Yes.

MR. McNALLY: Let the record show that the witness has identified Mr. Dominic Cervello and Mr. Louie Zicarelli.

"Q Will you tell the Commissioner what you did after you arrived

at the road block in Iowa, Mr. Piper?

"A After I passed the car and arrived at the road block, I observed the car cross the South Dakota state line and proceed toward us at the road block. The car was waved to the side and I immediately went to the right front door of the vehicle and requested Mr. Cangelose to get out of the car which he did. I identified myself as a federal agent and told him that he was under arrest for transporting firearms in interstate commerce after having been convicted of a felony.

"Q And when you stopped the car and advised Mr. Cangelose that he was under arrest, were the three occupants of the car the same three men you have identified in this hearing today?

"A Yes, sir.

"Q That you saw in South Dakota?

"A Yes, sir. Mr. Cervello was driving the vehicle and Mr. Zicarelli was in the back seat.

"Q And you observed the 1962 Pontiac which you have previously identified; you observed that automobile cross from South Dakota into the State of Iowa?

"A Yes, sir.

"Q Let me ask you for clarification, Mr. Piper, were the three men arrested before they were searched or after they were searched?

"A No, sir. Mr. Harmon prior to the arrest was searching the vehicle and he had uncovered the double barreled shotgun and the side by side, pulled it out of the case. That's when I told Mr. Cangelose that he was under arrest.

"Q But you had waved the car to a stop prior to anyone entering

the vehicle and you had told them that they were being held for firearms violation, is that not true, Mr. Piper?

"A That's correct.

"Q And they were told that they were being held for a firearms violation before anyone entered the vehicle, is that not true?

"A That's—it all happened rather simultaneously. I walked up to Cangelose, he got out of the vehicle. I told him that he was under arrest and Harmon entered the rear door and started the search.

"Q At approximately the same time?

"A Yes. And the other two subjects had been arrested on the other side of the vehicle.

"Q Prior to any search of the vehicle?

"A Yes.

"Q Let me ask you this, Mr. Piper. Who first approached the vehicle?

"A I think everyone at once just walked up.

"Q Let me ask you this. Who first had conversation with any occupant of the vehicle?

"A I believe that was probably my conversation with Mr. Cangelose, getting him out of the vehicle was about the first conversation.

"Q And what was the conversation when Mr. Cangelose got out of the vehicle?

"A I asked him after I advised him that he was under arrest, I asked him which shotgun was his. He said, 'None of these shotguns belong to me, they belong to Fatty.' And at that time he said, 'I know that I can't transport guns across state lines, that is why I wasn't driving.

"Q Going back just one minute, Mr. Piper, did you have this conversation with Mr. Cangelose before Agent Cronin opened the back of the car?

"A No, sir. They had entered the car at that time.

"Q But you had arrested Mr. Cangelose before any search was made, is that not true?

"A That's correct. Yes."

On cross-examination, Mr. Piper testified as follows:

"Q Now, then, when this automobile approached, who flagged it down?

"A I can't recall who. Someone motioned it into the side.

"Q And did the automobile pull over to the side?

"A Yes, sir.

"Q Was there any resistance of any sort offered by anyone?

"A None whatsoever.

"Q Were you the first one to approach the automobile?

"A We approached the car from both sides, I think more or less simultaneous maneuver.

"Q And when you approached the automobile, you say you think you were the first one to speak?

"A I am not sure of that. I was one of the first.

"Q And to whom did you speak?

"A I asked Mr. Cangelose to get out of the car.

"Q And did he do so?

"A He did.

"Q Did you tell him that he was under arrest at that time?

"A I believe I searched him first.

"Q You told him to step out of the car?

"A Yes.

"Q And, then, you searched him?

"A Yes.

"Q How was he dressed?

"A  He had on a pair of slacks and a sweater, cowboy hat. Cowboy type rolled brim.

"Q  Did your search of his person reveal any weapons of any nature?

"A  No, sir.

"Q  Then where were the other two men when you asked Mr. Cangelose to step outside and search him?

"A  The other two?  You mean Mr. ———.

"Q  I mean Mr. Zicarelli and Mr. Cervello?

"A  At that time I believe the other agents were getting them out of the other side of the car.

"Q  You had nothing to do with them?

"A  No, sir.

"Q  After you searched Mr. Cangelose, did you have any other further conversation with him?

"A  Yes, I did.

"Q  What was that conversation?

"A  Told him he was under arrest for transporting firearms in Interstate commerce after having been convicted of a felony."

Mr. Cronin, another Government agent, testified on redirect examination as follows:

"Q  Mr. Cronin, I believe you testified that you were behind the Cangelose car when it was stopped by the other officers?

"A  Yes.

"Q  And that before you entered the Cangelose car, the occupants were all out of the car, is that true?

"A  Yes, they were all out.

"Q  And if you know, were they in the custody of the other officers?

"A  Yes, they were.  They were in custody.

"Q  Before you entered the Cangelose car?

"A  Yes."

The Supreme Court has not passed squarely on the question. In Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828, the court refused to justify the search as being incident to arrest. In that case, the petitioner showed up while his house was being searched and he was arrested at that time. In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, the agents knew facts upon which a search warrant could have been obtained. However, because the grounds for issuance of a search warrant are different than for an arrest warrant, there was no probable cause for an arrest until after the search had been partially conducted. The court said the arrest in that situation did not justify the search. That case is different from the present case in that the arrest had to be justified on the search. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, is like the Johnson case in that the petitioner came to the garage while the search was going on and was arrested.

■■■ In Stoner v. California, supra, the court stated:

"But a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest."

In Preston v. United States, supra, the court said:

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person accused for weapons or for the fruits of or implements used to commit the crime."

In a footnote in the Stoner case, the court said:

"Although some members of this Court have expressed the view that the statement in Agnello defining the permissible bounds of a search incident to arrest went too far, see,

e. g., Harris v. United States, 331 U.S. 145, 155, 183, 195, 67 S.Ct. 1098, 1103–1104, 1113, 1119, 91 L.Ed. 1399 (dissenting opinions); United States v. Rabinowitz, 339 U.S. 56, 68, 70 S.Ct. 430, 436, 94 L.Ed. 653 (dissenting opinion), the Agnello holding as to what may not be searched—a house substantially removed geographically from the place of arrest at a time not substantially contemporaneous with the arrest—has never been questioned in this Court."

In Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, the court said:

"The prosecution conceded below, and adheres to the concession here, that the arrest took place when the federal agents stopped the car. That is our view on the facts of this particular case. When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete."

In the present case, the petitioners were arrested when their car was stopped and they were taken into custody. This is true even though it may have been a minute or so later that Cangelose was formally told he was under arrest. See Feguer v. United States, 8 Cir., 302 F.2d 214, 245.

■ Because the arrest was in fact made at the time the petitioners were stopped and ordered from their car, the search was not only substantially contemporaneous with the arrest but it followed the arrest. Further, the court feels substantially contemporaneous does not mean that the search cannot proceed at the same time or a minute prior to the formal arrest as long as the arrest is not based on the search. Lee v. United States, 98 U.S.App.D.C. 97, 232 F.2d 354, is not controlling on this court and is factually somewhat different from this case.

■ The word "contemporaneous" appears to pervade the opinions of the court

intermittently. In itself, the word is difficult to define. It is being considered here with reference to time and actually connoting immediate action. In the case at bar, it is obvious from the testimony and evidence offered and introduced that the action here of arrest and search took place as nearly simultaneously as it would be possible. Thus it would appear that where the acts of arrest and search are in substance instantaneous, that the search, so long as it was for the purpose of protection of the officers, prevention of escape and elimination of destruction of evidence, would not be illegal.

■ There was unquestionably probable cause to arrest and search the petitioners. The officers watched them load the guns into the automobile at Brookings, South Dakota and followed them to the Iowa border at Sioux City, Iowa. The officers lost track of the car only for a short while in the traffic around Sioux Falls, South Dakota. The officers had strong reason to believe the guns were still in the car. The petitioners in the car had not changed seats from Brookings to Sioux City.

■ Although there were no arrest warrants, the arrests in this case were lawful. The officers had authority to make arrests without warrants for any offense committed in their presence or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person arrested had committed, or is committing, such felony. The authority is found in Title 26 U.S.C. § 7608 or Section 755.4 of the Iowa Code, I.C.A. See United States v. Viale, 2 Cir., 312 F.2d 595; United States v. Murphy, 3 Cir., 290 F.2d 573.

The officers had reason to believe that an offense under Section 902, Title 15, had been committed and that the petitioners had committed it. The petitioners were seen putting the guns in the car and, because of the surveillance, they had reason to believe the guns were still in the automobile. The grounds for issuance of a search warrant are found in

Rule 4(a) of the Federal Rules of Criminal Procedure. The officers could not have obtained an arrest warrant because no offense had been committed prior to the time that the petitioners left South Dakota and entered Iowa. Probably, to make the arrest lawful, the warrant for arrest must be obtained when possible. See Jones v. United States, 357 U.S. 493, 500, 78 S.Ct. 1253, 2 L.Ed.2d 1514. However, that is not a problem in this case because there were no grounds for the issuance of a warrant for the arrest of the petitioners until only moments before they were actually arrested.

The grounds essential for a search warrant under Rule 41 are broader than the grounds for issuance of an arrest warrant and there is a stronger argument that it would have been practical to have obtained a search warrant in this case. However, the practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest. Ker v. California, supra; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The Government contends that Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 and Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, would allow a search in this instance on probable cause alone. Preston v. United States, supra, seems to make it clear, however, that the requirement of getting a search warrant when an automobile is to be searched is only relaxed when circumstances are present wherein the evidence or contraband material may be destroyed or the suspect escape, and that the requirement is not dispensed with under conditions where a search without the warrant would be unreasonable.

In the present case, the search is justified as incident to the arrest because the search was substantially contemporaneous with the arrest.

Accordingly, it is hereby ordered that the motion of Dominic J. Cervello to suppress filed February 21, 1964, is hereby overruled and denied.

It is further ordered that the motion of Louie Zicarelli to suppress filed February 21, 1964, is hereby overruled and denied.

It is further ordered that the motion of Louis Cangelose to suppress filed February 21, 1964, is hereby overruled and denied.