**Frances Lenore HOLT, Petitioner-Appellant,**

v.

**Marcia SIMPSON, Superintendent of Wisconsin Home for Women, and the State of Wisconsin, Respondents-Appellees.**

**No. 14655.**

United States Court of Appeals
Seventh Circuit.

Jan. 21, 1965.

Sherwood Slate, Milwaukee, Wis., for appellant.

William A. Platz, Asst. Atty. Gen., Madison, Wis., for appellees.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner Frances Lenore Holt is an inmate of the Wisconsin Home for Women at Taycheedah, Wisconsin. She is serving a life sentence imposed by a Wisconsin state court after a jury found her guilty of first degree murder of her newly born infant. Her conviction was affirmed by the Wisconsin supreme court, Holt v. State, 17 Wis.2d 468, 117 N.W.2d 626 (1962); and a petition for certiorari to the United States Supreme Court was denied, Holt v. Wisconsin, 374 U.S. 844, 83 S.Ct. 1900, 10 L.Ed.2d 1064 (1963). Subsequently, the federal district court denied her application for writ of habeas corpus, but granted a certificate of probable cause. This appeal followed.

In the district court petitioner claimed that her constitutional rights were violated by the Wisconsin authorities because of an unreasonable search and seizure and the introduction during her trial of evidence procured by the search. It was agreed by counsel representing petitioner and respondents that no evidentiary hearing was required and that the application for the writ could be decided on the record presented in the Wisconsin supreme court. We shall summarize the facts disclosed by the state court record.

Petitioner became pregnant about September, 1959, at a time when her husband, Frank Holt, was in prison. He returned home in April, 1960. On July 1, 1960, the petitioner gave birth to a baby boy unassisted on the davenport in her home. After the baby was born, she picked it up, placed it in a bag, put it in the furnace, and then lit a fire. About ten days later petitioner related the incident to a friend, Mildred Rozanski, who then reported it to a Milwaukee police officer. The next day, Sunday, July 17, police officer Robert Gaurke and policewoman Joan Hobus of the Milwaukee police were sent to petitioner's home to investigate the report of Mrs. Rozanski. They were met at the door by petitioner's husband. After identifying themselves as police officers and saying they wished to see petitioner, they were invited in by Mr. Holt. He identified his wife. The officers identified themselves. They told petitioner they wished to speak with her in private. She showed them into a bedroom where the officers proceeded to ask her about the report they had received. During

the interrogation petitioner admitted that she had given birth to a baby and that she had put it in the furnace. Thereupon the officers asked to be shown the furnace and petitioner led the way to the basement. Although there is conflicting evidence concerning the precise order of events and the exact words used at this point of the investigation, it is clear that the officers searched the furnace, found the charred torso of a baby, and then placed petitioner under arrest.

Petitioner contended at her trial that the baby was stillborn and that she burned it because she did not have funds to have it buried. The Wisconsin supreme court held there was sufficient evidence, however, for the jury to find that the baby had, in fact, been born alive.

The question of an unlawful search and seizure was raised initially in the trial court. The court held that petitioner had voluntarily consented to the search made in the home. The supreme court affirmed. In so doing it recognized that under Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the fourth amendment to the Constitution was applicable. Although deploring "the technique employed" and the failure by the officers to obtain a search warrant, the court held that various statements made by the petitioner were sufficient to indicate that she freely consented to the search.[1]

The district judge in the instant proceeding agreed with the reasoning of the Wisconsin courts and said that "the petitioner's consent to the search and seizure is shown in the record by clear and positive evidence, we * * * need not decide whether the search and seizure was otherwise justified."

With deference to the holding of the Wisconsin supreme court and the views of the district judge, we hold that regardless of consent, the search of the furnace and the seizure of the evidence were lawful. We affirm the denial of the petition on the basis that the search was reasonable without deciding the specific question of whether there was voluntary consent to it.

The police officers went to petitioner's home to investigate the bizarre story related by Mildred Rozanski. This was normal investigative procedure. There was no reason for them to be equipped with a warrant of arrest or a search warrant at that point in time. In fact it is doubtful that a warrant for a search or arrest based upon the hearsay statement of the informant would have legalized the officers' entry into the home had it been otherwise unlawful.

Having been invited into the home by petitioner's husband, the officers asked to talk to her in private. She readily consented. During the questioning that followed, petitioner admitted having had the baby and said that it was in the furnace. This admission was freely made; it was not obtained by coercion. Upon hearing the admission, the officers had probable cause to place petitioner under arrest. As a matter of fact, however, they did not announce her arrest, but proceeded to the basement and looked in the furnace where they discovered the charred body. They then placed petitioner under arrest.

If the officers had actually placed petitioner under arrest before making the search, there is no doubt that they would have been authorized to search the premises. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). In that case the Court said: "It is unreasonable searches that are prohibited by the Fourth Amendment. * * It was recognized by the framers of the Constitution that there were reasonable

1. Petitioner testified "They [the officers] didn't use force on me in any way. * * * I never told them to get out of the house. They were always polite and they treated me courteously while they were there." In the basement, the petitioner pointed to the furnace and said the baby was in there. One of the officers asked to inspect the interior of the furnace. Petitioner replied, "If you want to, go ahead."

searches for which no warrant was required." The Court went on to say: "What is a reasonable search is not to be determined by any fixed formula. * * * The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. * * * That criterion * * depends upon * * * the total atmosphere of the case." This interpretation of the fourth amendment was echoed in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961), and more recently in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L. Ed.2d 726 (1963).

■ Petitioner argues, however, that the search must follow and not precede a lawful arrest. We think otherwise. When probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical formality of time to control when there has been no real interference with the substantive rights of a defendant.

■ Finally, we hold that the "total atmosphere" of the case—the purpose and conduct of the officers in gaining admission to the home, their conduct in questioning petitioner, and petitioner's statements and admissions prior to the search—justified the search without a warrant.

We entertain no doubt that a search warrant would have issued if the officers had interrupted their investigation after obtaining petitioner's admission and sought a warrant. This, however, would only have produced delay and also perhaps afforded an opportunity to conceal or destroy the corpus delicti. The reasonable procedure was that adopted by the officers. In these circumstances, the fourth amendment's prohibition against unreasonable searches and seizures was not offended.

The judgment is affirmed.