[Crim. No. 9015. In Bank. Dec. 9, 1965.] ·

THE PEOPLE, Plaintiff and Respondent, v. IVY DELL COCKRELL et al., Defendants and Appellants.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Gerald D. Lenoir for Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, J.—Ivy and Leroy Cockrell, husband and wife, waived a jury trial and were found guilty by the court of sale of marijuana on January 29, 1963, possession of marijuana for sale on February 18, 1963, and conspiracy to sell marijuana. In addition Ivy but not Leroy was found guilty of sale of marijuana on February 18, 1963. Other co-defendants were convicted of various offenses, but the Cockrells alone appeal from the judgments.

They contend that evidence was obtained by an unlawful search of their home and car, that the evidence is insufficient to support their conviction of conspiring to sell marijuana, that statements by Mrs. Cockrell were inadmissible under *Escobedo* v. *Illinois,* 378 U.S 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and that it was error to admit evidence of an accusatory statement and Mr. Cockrell's response thereto. We have concluded that none of these matters warrants a reversal of the judgments.

Thomas Greene, an undercover narcotics agent, was introduced to codefendants Leslie Foreman and Willie Goodjohn by an informant, and Greene told them that he was interested in buying narcotics. Several days later Greene saw Foreman and another codefendant, Bernice Phillips, and Greene asked Foreman, "What about this deal?" Foreman replied, "It is a $140 for a brick [a term used in narcotics terminology to refer to 2.2 pounds]." Greene said that he did not have $140 and wanted to buy a pound. Miss Phillips said that "he wouldn't go for a pound," that she had made the deal for $140 for a brick, and that "he might get hinky" if she changed. After further discussion it was agreed that Greene would pay $100 and Miss Phillips would add to this

amount so that a brick could be purchased. Greene handed
$100 to Miss Phillips, who then left. About an hour later
Greene saw her between the porch of the Cockrells' home and
the public sidewalk, and she appeared to be carrying some-
thing. He followed her when she left in a car and after
driving a few blocks signaled to her to stop. They agreed to
meet at her home, and upon arriving there Miss Phillips
showed him a brick of marijuana. He took a share of it and
left.

On February 18, 1963, Greene told Miss Phillips that he
was "looking," and she said that she thought she could help
him. He handed her $140, the serial numbers of which had
previously been recorded. They drove to the neighborhood
where the Cockrells lived, and Miss Phillips went up to the
Cockrells' home and was admitted by a woman. Several min-
utes later Miss Phillips returned to the car and showed
Greene a package of marijuana. He gave a prearranged sig-
nal to Officer Burley, who with other officers had the Cock-
rells' home under surveillance, to indicate that he had been
successful in buying narcotics. Greene and Miss Phillips then
drove away but after they had gone a short distance they
were stopped by Burley, and Miss Phillips was placed under
arrest. Burley observed in Greene's car a package he believed
to contain marijuana. He asked Miss Phillips where she ob-
tained the package, and she replied, "You probably know
where I got it. You probably have been watching me for some
time. I got it from the woman at that house. . . ."[1]

A few minutes after Miss Phillips' arrest Burley and
Officers Bridges and Allender went to the front door of the
Cockrells' home. It was then about 8 p.m. and dark outside.
One of the officers knocked on the door, stated that they were
sheriff's officers, and requested admittance. There was no
answer, but they could hear someone moving. After waiting
about a minute Bridges and Allender forced the front door
open and entered, Burley entered by a back door, and at least
one more officer also entered about the same time. They found
Mrs. Cockrell alone inside the house. After showing her their
identification they asked if she had any money in the house,
and she replied that two or three dollars was all she had.
They inquired if she had any marijuana, and she said that
she did not. They then asked if they could "look around to

---

[1] An objection to the quoted statement on the ground of hearsay was
overruled, and the judge said that the statement "is just admitted on
the question of probable cause."

determine if she had any," and she said, "Well, go ahead. I have nothing to hide." In the living room the officers removed a purse from a chest and on looking inside the purse found about $1,000. They checked the serial numbers on some of the bills and ascertained that they matched those on the list of numbers that had been recorded. Mrs. Cockrell was then placed under arrest for violating the state narcotic laws. Additional officers entered the house following Mrs. Cockrell's arrest, and about eight or nine officers searched the premises during a period of at least 45 minutes after the initial entry into the home. During the search the officers found marijuana in a hamper on the back porch and marijuana seed on a chest in a hallway. They discovered in a bureau drawer in the living room nine packages of cigarette papers of a type used extensively in the narcotic trade. In the backyard in trash cans they found 15 packages of marijuana, each weighing about one and three-fourths pounds, and, according to an officer, this amount of marijuana would make about 30,000 cigarettes and 10 such cigarettes are the maximum number that one who uses them frequently can generally smoke in a 24-hour period.

Following the search at the Cockrells' home Burley and other officers arrested Mr. Cockrell in the county courthouse. They then went with him to his car, which was parked in a lot nearby. He denied having any contraband in the car and when asked by the officers if they could look he replied, "Yes." Inside the car underneath the back seat the officers found marijuana seeds.

Mr. Cockrell, testifying in his own behalf, denied selling marijuana to anyone on January 29, 1963, and in general denied knowledge of the marijuana found at his home and in his car. He further testified to the following effect: He and his wife lived alone in their home. The trash cans in which marijuana was found were also used by a tenant, who lived on the rear of their property. Mr. Cockrell had seat covers put on his car in January 1963 and from the time this work was done until the officers removed the back seat of his car so far as he knew the seat had not been moved. He had known Miss Phillips about six years but had not seen her for over two years before his arrest.

Defendants contend that the court erred in admitting, over objection, the evidence found in the search of their house and yard. It does not appear that the law enforcement officers had a search warrant, and in the absence of such a showing we

must conclude that they did not. (*People* v. *Burke,* 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67].)[2] ▇ Defendants assert that the circumstances surrounding Mrs. Cockrell's apparent consent to the search compel the conclusion that her consent was not voluntarily given but was in submission to the express or implied assertion of authority by the officers. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641].) Even if it be assumed that defendants' assertion is correct, the search was nevertheless lawful if it was incident to a valid arrest.

It does not appear that the officers had a warrant for Mrs. Cockrell's arrest, but a peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony (Pen. Code, § 836). ▇ Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. (*People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967].) ▇ Here before entering the Cockrells' house Officer Burley observed Miss Phillips return from that house to Greene's car, received the signal from Greene, saw the package containing what Burley believed to be marijuana, and was told by Miss Phillips that she obtained the package from ''the woman in that house.'' It thus appears that the officers had probable cause for Mrs. Cockrell's arrest.

▇ The next question is whether the lawfulness of the arrest, though based upon probable cause, was vitiated by the method of entry. Penal Code section 844 provides, ''To make an arrest, . . . a peace-officer, may break open the door . . . of the house in which the person to be arrested is, . . . after having demanded admittance and explained the purpose for which admittance is desired.'' Although it does not appear that the officers ''explained the purpose for which admittance'' was ''desired,'' they substantially complied with section 844 by knocking, requesting admittance, and identifying themselves as sheriff's officers. (*People* v. *Carswell,* 51 Cal.2d 602, 607 [335 P.2d 99]; *People* v. *Martin,* 45 Cal.2d 755, 762-763 [290 P.2d 855]; *People* v. *Miller,* 193 Cal.App.

[2]On the morning of February 18 Greene started proceedings to get a search warrant but about noon was told to stop because he was ''wanted in the field.'' It does not appear that any other officer thereafter obtained such a warrant.

2d 838, 841 [14 Cal.Rptr. 704].) Since it appeared that a sale of marijuana had been made in the Cockrells' home only minutes before the officers requested admittance, "the purpose for which admittance" was "desired" was reasonably apparent.

The arrest of Mrs. Cockrell was lawful, and it is necessary to consider whether the search was incident thereto. It appears that part of the search was conducted before she was placed under arrest. Cases in this state have held that if before making a search and seizure officers are justified in making an arrest it is immaterial that the search and seizure preceded rather than followed the arrest. (E.g., *People* v. *Torres, supra* (1961) 56 Cal.2d 864, 866; *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294 [294 P.2d 36]; *People* v. *Simon* (1955) 45 Cal.2d 645, 648-649 [290 P.2d 531].)

The United States Supreme Court stated in *Ker* v. *California* (1963) 374 U.S. 23, 43 [83 S.Ct. 1623, 10 L.Ed.2d 726], that it was unnecessary to reach the question of the status of this rule under the federal Constitution in view of certain circumstances there present, and subsequent decisions by that court have not decided the question. ▮ Decisions by the United States Supreme Court before and after *Ker* have stated that a search may be incident to an arrest where, among other things, it is "contemporaneous" or "substantially contemporaneous" with the arrest. (*Agnello* v. *United States* (1925) 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]; *United States* v. *Rabinowitz* (1950) 339 U.S. 56, 61 [70 S.Ct. 430, 94 L.Ed. 653]; *Stoner* v. *California* (1964) 376 U.S. 483, 486-487 [84 S.Ct. 889, 11 L.Ed.2d 856]; *Preston* v. *United States* (1964) 376 U.S. 364, 367 [84 S.Ct. 881, 11 L.Ed.2d 777].) This language clearly does not preclude the possibility that a search preceding an arrest may be incident thereto.

At least two lower federal courts have concluded that a search preceding an arrest may be incident thereto where probable cause existed at the outset and the arrest and search are nearly simultaneous and constitute for all practical purposes but one transaction. (*Holt* v. *Simpson* (1965) 340 F.2d 853, 856; see *United States* v. *Cangelose* (1964) 230 F.Supp. 544, 550; but see *Lee* v. *United States* (1956) 232 F.2d 354, 355-356 [98 App.D.C. 97]; *Hurst* v. *California* (1962) 211 F.Supp. 387, 392 [reversed on other grounds 381 U.S. 760 [85 S.Ct. 1796, 14 L.Ed.2d 713]; *United States* v. *Royster* (1961) 204 F.Supp. 760, 762-763.) *Holt* pointed out that "To

hold differently would be to allow a technical formality of time to control when there has been no real interference with the substantive rights of a defendant.''

In our opinion the search of the Cockrells' house and yard was ''substantially contemporaneous'' with Mrs. Cockrell's arrest, and the fact that she was not formally placed under arrest until after the search was commenced is immaterial.

In order to be incident to an arrest a search must also be limited to the premises where the arrest is made, have a definite object, and be reasonable in scope. (*People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) Here the search was limited to the premises where the arrest was made, appears to have had a definite object, namely the finding and seizure of contraband and fruits or instrumentalities of the crime, and was reasonable in scope. (Cf. *Harris* v. *United States,* 331 U.S. 145, 148 et seq. [67 S.Ct. 1098, 91 L.Ed. 1399].) We are satisfied that the court did not err in admitting the evidence found at defendants' home.

Defendants' claim that the judgment should be reversed because the marijuana in the car was obtained by an unlawful search is without merit. At the trial no objection on this ground was made to the marijuana found in the car, and ordinarily the admissibility of evidence will not be reviewed on appeal in the absence of a sufficient objection in the trial court. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Richardson,* 51 Cal.2d 445, 447 [334 P.2d 573].) Moreover, Mr. Cockrell consented to the search of the car, and the fact that he was then under arrest does not show as a matter of law that his consent was not voluntarily given. (*People* v. *Fischer,* 49 Cal.2d 442, 448 [317 P.2d 967].)

We do not agree with defendants' contention that the evidence is insufficient to support their conviction of conspiring to sell marijuana. A criminal conspiracy exists when two or more persons agree to commit a crime and do some overt act in furtherance of the agreement. (Pen. Code, §§ 182, 184; *People* v. *Van Eyk,* 56 Cal.2d 471, 478 [15 Cal. Rptr. 150, 364 P.2d 326].) It need not be shown that the parties met and actually agreed to jointly undertake criminal action. (*People* v. *Calhoun,* 50 Cal.2d 137, 144 [323 P.2d 427].) The agreement may be inferred from the conduct of the defendants in mutually carrying out a common purpose in violation of a penal statute. (*People* v. *Causey,*

220 Cal.App.2d 641, 653 [34 Cal.Rptr. 43].) Here the evidence, viewed in the light most favorable to the prosecution, discloses that the Cockrells were in possession of a large quantity of marijuana, that on two occasions Miss Phillips obtained marijuana at the home of the Cockrells for sale to Greene, and that each of the Cockrells participated in one or both of the sales to Greene. This evidence is sufficient to show an agreement between the Cockrells and Miss Phillips to sell marijuana and overt acts in furtherance of that agreement.[3]

Testimony regarding statements by Mrs. Cockrell to officers at her home and at the station was admitted. The trial was before the decision in *Escobedo* v. *Illinois, supra* (1964) 378 U.S. 478, and thus the failure to object at the trial to the admission of the testimony does not bar the claim that the statements were inadmissible under that decision. (*People* v. *Hillery,* 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382].)

 At her home Mrs. Cockrell told the officers that she did not have any marijuana. She also told them that she had only two or three dollars in the house but when the money was found she said that she received it from the sale of some property and that it had been in the house for about two weeks. After the officer ascertained that the serial numbers of some of her money matched those on the recorded list, she said, ''Oh yes, some woman came here, gave me some money, received some marijuana and left. I don't know how the money got among my other money,'' and that she did not know who gave the woman the marijuana. She further stated to the officers that she did not know anything about the marijuana found in the trash cans. Later, at the station, she told an officer that she would like to help him but that her husband had advised her not to say anything.

Even if it be assumed that the testimony regarding Mrs. Cockrell's statements was inadmissible under *Escobedo* v. *Illinois, supra,* 378 U.S. 478, the admission of this evidence did not result in a miscarriage of justice. The statements did not constitute a confession but were for the most part attempted exculpatory statements. They added little to the prosecution's case, and in view of the strong evidence of Mrs. Cockrell's guilt of the crimes of which she was convicted, we are not of the opinion that it is reasonably probable that a result more favorable to Mrs. Cockrell would have been

---

[3]Miss Phillips was also convicted on the conspiracy count.

reached had the testimony regarding her statements not been admitted. Such admission did not constitute reversible error under the provisions of section 4½, article VI, of the California Constitution, or under the tests enunciated in either *People* v. *Watson,* 46 Cal.2d 818, 835 [299 P.2d 243], or *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 [84 S.Ct. 229, 11 L.Ed.2d 171].

The court admitted against Mr. Cockrell, over objection, testimony by Officer Burley regarding an accusatory statement and Mr. Cockrell's response thereto. Burley's testimony was to the following effect: At the station Miss Phillips stated in Mr. Cockrell's presence that around January 29 she went to his residence and asked him if she could buy marijuana from him, that he said that she could, that she told him she would return about 6 p.m., that he said that he would not be there but his wife would give it to her, that she thereafter returned and purchased marijuana from Mrs. Cockrell, and that she again went to the residence on February 18 and bought more marijuana from Mrs. Cockrell. Burley asked Mr. Cockrell what he had to say about "that," and Mr. Cockrell remained silent.

Later in the trial, after Burley had given the foregoing testimony, Mr. Cockrell testified that the reason he had remained silent in response to the accusatory statement was that his attorney in another matter had told him never to say anything when he was in trouble until he had legal advice. Thereafter defense counsel did not renew his objection to Burley's testimony relating to the accusatory statement and made no motion to strike it.

At the time of the trial the United States Supreme Court had not rendered its decisions in *Malloy* v. *Hogan* (1964) 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], and *Griffin* v. *California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]. *Griffin* held that the California constitutional provision permitting comment on the failure of the defendant to testify (Cal. Const., art. I, § 13) was unconstitutional because it violated the Fifth Amendment privilege against self-incrimination made applicable to the states in *Malloy* by the Fourteenth Amendment. *Griffin* declared (at p. 614) that such comment "is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly."

The rationale of *Griffin* implicitly proscribes drawing an inference adverse to the defendant from his failure to reply

to an accusatory statement if the defendant was asserting his constitutional privilege against self-incrimination. Several lower federal court decisions have recognized the defendant's right to remain silent when under arrest without an express claim of his privilege against self-incrimination. (E.g. *Ivey* v. *United States* (1965) 344 F.2d 770, 772-773; *United States* v. *Pearson* (1965) 344 F.2d 430, 431; *Helton* v. *United States* (1955) 221 F.2d 338, 341-342; *McCarthy* v. *United States* (1928) 25 F.2d 298, 299.) *Pearson* and *McCarthy* stated, that ''after the arrest and during an official examination, while respondent is in custody, it is common knowledge that he has a right to say nothing. Only under peculiar circumstances can there seem to be any duty then to speak. Lacking such circumstances, to draw a derogatory inference from mere silence is to compel the respondent to testify; . . .''

■ '' [T]he same standards must determine whether an accused's silence in either a federal or a state proceeding is justified.'' (*Griffin* v. *California, supra,* 380 U.S. 609, 615; *Malloy* v. *Hogan, supra,* 378 U.S. 1, 10-11.) ■ Accordingly, even though it does not appear that Mr. Cockrell made any statement indicating that he was invoking his privilege against self-incrimination, he had a right to remain silent and an inference adverse to him may not be drawn from his silence. Burley's testimony relating to the accusatory statement was therefore inadmissible against Mr. Cockrell.[4]

■ Although it was error to admit against Mr. Cockrell the accusatory statement and his response thereto, the rule of section 4½, article VI, of the California Constitution is applicable and automatic reversal is not required. (Cf. *People* v. *Bostick,* 62 Cal.2d 820, 823 et seq. [44 Cal.Rptr. 649, 402 P.2d 529].) As we have seen, Mr. Cockrell denied selling marijuana on January 29 and in general denied knowledge of the marijuana found by the officers, but there is abundant evidence to the contrary. Marijuana was found both in his car and in a number of different places in the house in which only he and his wife lived, and a large quantity of it was found in their yard. On two occasions Miss Phillips obtained marijuana at the Cockrells' home, and in her conversation with Greene before going to the Cockrells'

---

[4]This conclusion renders it unnecessary to consider what effect, if any, Mr. Cockrell's explanation at the trial for his silence had upon the admissibility of Burley's testimony relating to the accusatory statement and whether it was necessary following the explanation to make a motion to strike that testimony by Burley.

home on January 29 she referred to the person with whom she had made the deal to buy marijuana as "he." In view of the abundant evidence of Mr. Cockrell's guilt we are not of the opinion that it is reasonably probable that a result more favorable to Mr. Cockrell would have been reached in the absence of the error. Such admission did not constitute reversible error under the provisions of section 4½, article VI, of the California Constitution or under the tests enunciated in either *People* v. *Watson, supra,* 46 Cal.2d 818, 835, or *Fahy* v. *Connecticut, supra,* 375 U.S. 85, 86-87.

The judgments are affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and White, J.,* concurred.

Appellants' petition for a rehearing was denied January 26, 1966. Mosk, J., did not participate therein.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.