[Crim. No. 13168. Second Dist., Div. Four. Feb. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES M. BROWN et al., Defendants and Appellants.

Russell E. Parsons and Earl C. Broady, Jr., for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendants Charles M. Brown, Tony Caton, Cora Craddock, Charlie Fleming, John M. Fleming, Lorene Fleming, Mable C. Haley, John McGowan, Johnnie Price, Erenthia V. Woolfolk, Bessie M. Smith and Roy Young were each convicted by the court of two offenses, conspiracy to conduct a lottery (Pen. Code, §§ 320, 321, 322, 323) and to engage in bookmaking (Pen. Code, § 337a), in violation of Penal Code, section 182, subdivision 1, and bookmaking, in

violation of Penal Code, section 337a, subdivision 1. By stipulation the case was submitted to the court on the testimony contained in the transcript of the preliminary hearing. John Fleming was sentenced to prison. The other 11 defendants received county jail sentences and fines. All 12 defendants appeal and all urge the same contentions. They maintain (1) that evidence introduced against them was illegally secured because the affidavit supporting the search warrant used to secure the evidence was insufficient; (2) that disclosure of the identity of an informant should have been required; (3) that insufficient evidence was introduced to prove the charge of conspiracy.

Defendants were arrested after an extended investigation of their activities by members of the Los Angeles Police Department had culminated in a coordinated raid on several locations where they lived or operated from. Initiated on information supplied by a reliable informant, the investigation was directed by Officer Nishimura, an expert on bookmaking and lottery activities.

On March 17, 1965, from about 11 a.m. until about 1 p.m., Nishimura and his partner, Officer Jones, were staked out near 14329 South Central (described as a "smoke shop") and Johnnie's Men's Shop located next door at 14327 South Central. The latter business was owned by John Fleming.

The informant had told the officers a few days before that John Fleming, John McGowan and another individual were the bosses of a numbers (lottery) and bookmaking operation; 14329 South Central was a numbers drop spot and place where horse race bets were made; Roy Young ran this drop spot; persons often entered the location to place wagers on numbers and horses; numerous "routemen" left their numbers slips there.

From the time they arrived until they left that day the officers observed many people, several carrying white slips of paper, enter 14329 South Central. They would drive up and park, go in and stay for a few minutes and then leave.

On March 24th the officers again staked out near 14329 South Central. Again they observed great numbers of people coming and going, most staying only a few minutes, and many carrying in white slips of paper. At 1 p.m. they saw Erenthia Woolfolk enter. Roy Young was observed opening the place up. His car was still there at 9 p.m. that evening.

On March 26th the officers saw Bessie Smith open up at about 10 a.m. Roy Young arrived a short time later. People

then began to come and go as before. At 11:30 a.m. Erenthia Woolfolk and another woman drove up. They talked outside with Roy Young for a few minutes and then left. At about noon John Fleming arrived and entered. After a few minutes he left and went next door. At about 1:30 p.m. Roy Young left the location for a short time. There were white slips of paper protruding from one of his pockets. On two occasions during the day a man came out of Johnnie's Men's Shop next door and was handed white slips of paper by persons parked in front. At 2:40 p.m. John Fleming and Roy Young left in their respective automobiles. Young placed what appeared to be white slips of paper on the seat of his car before driving off.

On April 2d between 1 and 6 p.m., Officer Nishimura was again in the vicinity of 14329 South Central. About 80 vehicles were driven up during that period of time. The occupants were observed entering and then leaving the premises. That evening John Fleming, Roy Young and Bessie Smith all left at about 7:30 p.m. Smith was carrying a paper box which she placed in her vehicle.

John and Lorene Fleming lived at 8821 South Menlo. (The informant had told Nishimura that Lorene Fleming ran a back office or place where bets were recorded from this location.) At various times during April this residence was kept under observation. On April 5 Lorene Fleming was followed when she left the residence. She drove to 1205 West Spruce, Compton, where Bessie Smith lived. On April 8 Mrs. Fleming drove from the Menlo address to Johnnie's Men's Shop. John Fleming came outside and she handed him a paper box. She then proceeded to Bessie Smith's residence.

On April 13, at about 9:30 a.m., Tony Caton drove up to the Menlo residence. He stayed about 15 minutes and then left. The next morning he arrived again at about the same time. When he left, the officers followed him to 10956¾ South Figueroa. The phone number at the latter address was found to be registered to J. M. Fleming.

8462½ South Central, a cigar and candy store, was also kept under observation. On April 14, at 8 p.m., John McGowan drove from there to a residence at 1133 West 41st Street. After a short time he drove to 4300 Crenshaw where he met and talked with John Fleming on the sidewalk outside. On the evening of April 16 Cora Craddock, John Fleming and McGowan were at 1133 West 41st Street. Between 8:30 p.m. and midnight 12 vehicles were driven to that location. At

12:05 a.m. McGowan and Fleming walked out together and then drove away in their own cars.

On April 17, at about 1:30 a.m., Officers Nishimura and Jones looked at the contents of three trash cans set out for trash pickup in front of the residence at 8821 South Menlo. Inside the cans the officers found betting markers for numbers and horse wagers, race results and number slips with winning numbers circled. They also found adding machine tapes and owe sheets.

On the evening of April 19, John Fleming was followed from 14329 South Central to his Menlo residence. Tony Caton was there. Charles Fleming drove up to the residence a short time later.

On April 20th the officers observed the cars of John Fleming and John McGowan parked at 4300 South Crenshaw. On April 21 they staked out at 1133 West 41st Street. McGowan was observed leaving this residence at 10 a.m. A few minutes later Cora Craddock left in another car. They followed her to 7301 South 5th Ave., where she entered using a key. The next morning the officers again went to the vicinity of 1133 West 41st Street. At 9:15 a.m. McGowan entered the residence. About 15 minutes later he and Craddock came outside. After a short conversation on the sidewalk, McGowan drove off. About a half hour later she too left and drove to 7301 South 5th Avenue.

The above information secured by the officers' surveillance activities was set out in a lengthy affidavit prepared by Officer Nishimura. The affidavit recited that the confidential informant who had supplied the information which started the investigation was known to be reliable; he had in the past year supplied information on four separate occasions which was proven correct and which led to bookmaking and lottery convictions; he did not want his identity disclosed because of fears for his safety. Based on the affidavit, a search warrant was issued authorizing the search, for bookmaking and lottery paraphernalia, of the locations, the persons and the automobiles of the people the officers had had under surveillance.

Among other places, the warrant authorized the search of 14329 South Central Avenue (the smoke shop), 8821 South Menlo Ave. (the residence of John and Lorene Fleming), 8462½ South Central (cigar store), 1142 South Matthisen (Roy Young residence), 1205 West Spruce (Bessie Smith residence), 1851½ South Orange Drive, (John McGowan's apartment), 7301 South Fifth Avenue (Cora Craddock's resi-

dence),. 10956¾ . South Figueroa (Tony Caton residence) and 711 East Century (the residence of Charlie Fleming).

: Armed with the warrant, at about 1 p.m. on April 27th, a team of officers hit the above locations. They found Roy Young, Bessie Smith and Erenthia Woolfolk at 14329 South Central. There was considerable bookmaking paraphernalia on the premises, including scratch sheets, racing forms, betting markers, owe sheets, and adding machine tapes. Young had an adding machine tape and an owe sheet in his pocket. Upon the officers' discovery, Young and Smith were arrested. Mrs. Woolfolk was arrested outside in the parking lot after she had gone to her car. The officers had a warrant to search the car. Her arrest occurred after betting markers were discovered in the glove compartment of the car and in her purse.

The officers forced open the door at 8821 South Menlo when Lorene Fleming did not admit them after they identified themselves and told her they had a search warrant. They heard her running to another room. When they entered they found her crouching next to a closet in a back bedroom. The closet contained a combination floor safe. The apartment was searched and bookmaking paraphernalia, which included betting records in notebooks, was found. John Fleming was arrested at a different location and brought to the house. He first refused to open the safe but finally opened it when told that if he did not do so it would be drilled open. Inside was $15,800 in cash and a number of books which appeared to contain bookmaking records.

In the cigar store at 8462½ South Central, the officers found Charles Brown and Johnnie Price. When the officers entered, Brown was talking on the telephone and writing on a piece of cigarette paper. It appeared to be a horse wager. A book resting on his knee contained an owe sheet. Price was observed placing a small booklet inside his pocket. It contained numbers bets.

At Roy Young's residence, 1142 South Matthisen, the officers found lottery numbers, a National Daily Reporter and betting markers. His car (which the warrant also permitted the search of), also contained bookmaking paraphernalia. The residence of Bessie Smith (1205 West Spruce) also contained bookmaking paraphernalia. It had four telephones with two telephone lines going to the premises. In McGowan's apartment (1851½ South Orange Drive), the officers found blank A.B.C. markers commonly used by bookmakers to record bets.

When the officers knocked on the door and identified them-

selves at 7301 South Fifth Avenue, the residence of Cora Craddock, they heard someone running inside. They forced an entry and saw Craddock run into the bathroom. She attempted to flush something down the toilet. The officers retrieved five pieces of paper from the toilet bowl. They were owe sheets and betting markers. The officers were still inside when John McGowan came to the house. He was arrested after he entered. The phone rang and a female officer answered it. A voice at the other end of the line said, ''This is Amos. At Golden Gate four, two and two.'' The voice then said, ''This is for Riley: Four, two, five, seven, six, five. Make those all two and two.'' The phone rang several other times, but the callers immediately hung up when the officer answered.

The officers found Tony Caton at his residence at 10956¾ South Figueroa. The search undertaken turned up scratch sheets and a notebook with what appeared to be horse wagers.

At 711 East Century, Charlie Fleming's residence, the officers, upon identifying themselves and stating that they had a search warrant, heard running footsteps inside. They forced an entry. On a bridge table in a back bedroom they found a National Daily Reporter, three notebooks and three adding machines. Charlie Fleming, Mable Haley and another woman were in the house at the time. A trash can at the rear of the residence contained adding machine tape and scraps of notebook paper. While looking in this trash can one of the officers was told by Fleming, ''that's all the action you'll find in the cans.'' Fleming then said, ''The other two women had nothing to do with it. I took all the action, myself.'' At about 1:30 p.m. one of the officers answered the phone. A male voice said ''Johnnie's place just fell. Don't call Lorraine.'' The caller then hung up.

. A handwriting expert was of the opinion that John Fleming and probably Lorene Fleming wrote portions of the records and notes found at the Menlo residence; Roy Young wrote some of the exhibits found at 14329 Central Avenue; it was Charlie Fleming's handwriting in one of the notebooks found in his residence; Charles Brown wrote on two slips of paper found at the cigar store where he was arrested; it was Tony Caton's writing on several pieces of paper found in his residence; and that Cora Craddock had written the notes on the pieces of paper discovered in her apartment.

. Some of the identifying names on the bookmaking records found at the Menlo residence corresponded with the names found at some of the other locations hit during the raid.

The conspiracy count charged nine overt acts committed in furtherance of the conspiracy. After generally alleging, in overt act No. 1, that defendants adopted various symbols, numbers and names for the purpose of identifying their bettors and agents, the rest of the overt acts (except for overt act No. 9) alleged that defendants occupied the locations where they were found and furnished them with bookmaking and lottery paraphernalia. Overt act No. 9 alleged that defendants provided themselves with automobiles to facilitate the accepting, recording and relaying of wagers.

 Defense motions to suppress the evidence secured during the searches, on the ground that the search warrant was invalid because it was not supported by a legally sufficient affidavit, were denied by the trial court. This ruling is assigned as error.

 ''The determination to issue, or not to issue, a search warrant is primarily for the magistrate to whom application is made, and a court is authorized to set the warrant aside only if, as a matter of law, the affidavit or deposition on which it is based shows, on its face, that the probable cause required by the Constitution and by section 1525 of the Penal Code is lacking. [Citations.]'' (*People* v. *Aguilar,* 240 Cal. App.2d 502, 507 [49 Cal.Rptr. 584] ; *People* v. *Cruz,* 244 Cal. App.2d 137, 144 [53 Cal.Rptr. 354].)

 The supporting affidavit of Officer Nishimura contains a detailed recital of the officer's observations during the period of his surveillance of defendants. So complete is the affidavit that, in testifying at the preliminary hearing, both Nishimura and his partner Jones continually made use of it to refresh their recollections as to particulars such as dates, addresses and the license numbers of automobiles. The affidavit indicates that the officers began their investigation of defendants because of information they received from a confidential informer. Recited are facts which would support the conclusion of officer Nishimura that the informant was reliable. But the sufficiency of the affidavit is not made to depend on the information supplied by the informer. Quite apart from that information, the affidavit plainly states facts gathered from the independent investigation and personal observations of the officers—including the finding of the bookmaking and lottery paraphernalia in front of the Menlo residence and the observation of the veritable parade of people, many carrying slips of paper, going and coming from

14329 South Central—which clearly shows probable cause for issuance of the search warrant.

Contrary to defendants' assertion, the warrant sufficiently spells out what was to be searched for, namely, bookmaking and lottery paraphernalia (see *People* v. *Walker,* 250 Cal. App.2d 214, 220 [58 Cal.Rptr. 595]), and also sufficiently describes the persons, places and cars to be searched. (See *People* v. *Estrada,* 234 Cal.App.2d 136 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].)

█ Defendants predicate error on the failure of the trial court to require disclosure of the identity of the informer. There is nothing to indicate the informer was a participant in the crimes charged or that he would be a witness whose testimony could benefit the cause of defendants. He was a "mere informer." (See *People* v. *Garcia,* 67 Cal.2d 830, 836 [64 Cal.Rptr. 110, 434 P.2d 366].) He merely "pointed the finger of suspicion" at defendants and caused their activities to come under police scrutiny. (*People* v. *McShann,* 50 Cal.2d 802, 808 [330 P.2d 33] ; *People* v. *Balsz,* 252 Cal.App.2d 644, 648 [60 Cal.Rptr. 777].) Applicable here is the rule that ". . . where a search is made pursuant to a warrant valid on its face, the prosecution is not required to reveal the identity of the informer in order to establish the legality of the search and the admissibility of the evidence obtained as a result of it." (*People* v. *Keener,* 55 Cal.2d 714, 723 [12 Cal. Rptr. 859, 361 P.2d 587]. See also *People* v. *Balsz, supra,* at p. 649.)

█ Finally, with respect to the claim that the evidence does not sustain the finding that defendants were guilty of the conspiracy charge, it is asserted that no showing is made "of meetings, planning, or agreements" to engage in bookmaking or lottery. █ The required agreement, however, may be inferred from the defendants' conduct in mutually carrying out the common illegal purpose. (*People* v. *Cockrell,* 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].) "It need not be shown that the parties met and actually agreed to jointly undertake criminal action. [Citations.]" (*People* v. *Cockrell, supra,* at p. 667.) And it is not necessary to prove that all of its participants actually knew or directly associated with each other. (*People* v. *Drake,* 151 Cal.App.2d 28, 39 [310 P.2d 997].) █ "Common design is the essence of conspiracy, and the crime can be committed whether the parties comprehend its entire scope, whether they act in separate groups or together, by the same or different means

known or unknown to some of them, if their actions are consistently leading to the same unlawful result. [Citations.]'' (*People* v. *Buckman,* 186 Cal.App.2d 38, 48 [8 Cal.Rptr. 765].)

As the court in *Buckman, supra,* observed (at p. 48) : ''One has only to be casually acquainted with bookmaking activities to realize their extent and nature, and the stealth with which they are carried on [citations], and that more than one person is generally involved in such an enterprise in which, because of. its clandestine nature, it is safer that those participating know neither what others are doing nor their identity.''

The evidence in this case amply supports the finding that each defendant was engaged in bookmaking. Defendants do not challenge this finding. There was also ample evidence that they were involved in the numbers racket. The evidence further shows that defendants carried out their activity in groups. One or more of each group was observed in contact with those in the other groups. John and Lorene Fleming, together with Roy Young and Bessie Smith, worked together from the premises of 14329 South Central and the Flemings' Menlo residence. Woolfolk was observed going and coming from 14329 South Central. Brown and Price, who operated at the cigar store at 8462½ South Central, were tied in by the fact that McGowan was observed at that location before he drove to 1133 West 41st Street, where Craddock carried on her operation. McGowan was observed meeting with John Fleming. Tony Caton met with John Fleming at the Menlo residence, as did Charles Fleming. Caton was observed at the location at 10956¾ Figueroa. The telephone there was registered to J. Fleming. Mable Haley was found at the 711 E. Century location with Charles Fleming. Added to this, was the evidence of the phone call to the Century location warning them that John and Lorene Fleming's place had been hit; and the evidence that bookmaking records found at the Menlo residence contained names of bettors or agents which corresponded with the records found at other locations.

The court below was fully warranted in drawing the inference from the evidence that an agreement existed among defendants to carry on a bookmaking and lottery enterprise and that the occupying and furnishing of the various locations with bookmaking and lottery paraphernalia (as alleged in overt acts 2 through 8), were acts performed in furtherance of that agreement.

The judgments are affirmed.

Files, P. J., and Kingsley, J., concurred.