[Crim. No. 8423. Second Dist., Div. One. July 15, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM EDWARD COSTA, Defendant and Appellant.

Roger M. Sullivan, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and A. Wallace Tashima, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In a jury trial defendant Costa was convicted of first degree robbery. He appeals from the judgment, and from the order denying his motion for a new trial. Such an order is not appealable.

Appellant contends that the court erred in failing to give certain instructions regarding circumstantial evidence, included lesser offense, self-defense, and a dangerous weapon.

 Mr. Johnson (the victim) was playing cards at the Embassy Club in Gardena from 10 p.m. on March 3, 1961, to approximately 2 a.m. on March 4, except that on two or three occasions during that time he went into a nearby bar and had four or five drinks of liquor. While he was playing cards, he first saw defendant who was then standing outside the rail watching the game. About 1:30 or 2 a.m., while Johnson and defendant were in the bar, Johnson asked defendant whether he might ride with defendant toward town—to

Manchester Avenue or Florence Avenue, where he would get out of the car and catch the bus. After they entered defendant's car about 2 a.m., defendant drove north on Vermont Avenue and then turned onto the Harbor Freeway. Johnson, who sat in the right front seat, had $74 on his person. When they came to Manchester Avenue, Johnson said that he would get out of the car. Defendant replied that they would go to Las Vegas. When they came to Florence Avenue, Johnson said that he would get out and catch the bus. Defendant did not stop there, but kept driving for a long distance on the freeway and finally pulled off to the side and stopped. Then defendant grabbed Johnson around the neck and slugged him on the head with something hard. When Johnson regained consciousness, he was lying on the back seat of the moving car, he felt sticky and blood was on his fingers, his jaw was swollen, and his false teeth were broken. He picked up a jack-handle lug wrench, which was back of him on the car seat, and when the car slowed down he struck defendant's head with the wrench. Then the car hit the curb and a fire hydrant and came to a stop on Alameda Street in front of the Union Station (railroad station). Johnson jumped out of the car and hollered for help and the police. A car, driven by Jack Baker, came up back of them and stopped. Johnson went into the Union Station and telephoned the police. Defendant went to the police station (which was about 5 blocks away) and reported that he had been hit by Johnson. In response to Johnson's telephone call, Police Officer Lively went to the Union Station where Johnson reported the alleged robbery. While Johnson was awaiting the arrival of the police, he noticed that his $74 was missing. The police officer observed that the left side of Johnson's head was bleeding and that there was a bruise on his cheek. As a result of being struck with the wrench, it was necessary to make stitches in two places on Johnson's head.

Officer Magiera testified that, in a conversation with defendant at the police station about 4 a.m., defendant said that he had picked up a hitchhiker in Gardena, that on his way to Los Angeles the hiker had hit him on the head with a hard object and caused the car to run against a fire hydrant. The officer testified further that he took defendant to a hospital for treatment of a laceration on defendant's cheek; that after returning to the police station, he asked defendant how much money he had; defendant exhibited his

wallet which contained "seventy-some dollars"; he arrested defendant upon the charge herein.

Mr. Baker, the motorist who stopped at the scene where defendant's car ran against the hydrant, died before the time of the trial.

Defendant testified in substance, as follows: His working hours as an employee of an airplane-parts factory were from 3 p.m. to 12:30 a.m. After finishing his work on March 4, 1961, he arrived home about 1 a.m. He decided to go to Long Beach and borrow water skis from a friend so that he could use them before returning to work at 3 p.m. His wife gave him $65 to be used as a payment on a boat, and he put the money in his wallet. On his way to Long Beach he stopped at the Monterey Club in Gardena for a cup of coffee. About 2 a.m., when he was returning to his car, he noticed that Johnson was intoxicated and staggering. When Johnson asked for a ride, defendant said that he was going to Long Beach, and he asked Johnson if that would help him. After Johnson replied in the affirmative, defendant helped him into the car. Defendant drove south on Vermont Avenue. When Johnson, in a playful manner, began grabbing the steering wheel, defendant stopped the car and put him in the rear seat. As they continued toward Long Beach, Johnson fell asleep. When they arrived in Long Beach, Johnson said that he wanted to go back to Gardena. Defendant went to the home of his friend where he intended to borrow the skis, but the friend was not there. Then defendant decided that he would go to the home of his brother in Inglewood and borrow skis. While proceeding to that place, he traveled upon Artesia Boulevard and the Santa Ana Freeway, and finally reached the location on Alameda Street in Los Angeles, near the Union Station, where Johnson hit him on the head with the wrench and caused the car to run against the hydrant. After they had wrestled for a while outside the car, Johnson ran towards Baker's car (which had arrived at the scene) and continued running. Defendant went to the police station in a taxicab about 4 a.m. On cross-examination, defendant said that he had been convicted previously of armed robbery.

Appellant contends that substantial elements of the alleged robbery were based on circumstantial evidence, and that the court should have given an instruction to the effect that where the prosecution's case is based substantially on circumstantial evidence the jury should not find the defendant guilty unless

the proved circumstances not only are consistent with the hypothesis that he is guilty of the crime, but are irreconcilable with any rational conclusion. He argues that the substantial elements of the robbery, which were based on circumstantial evidence, pertained to the kind of weapon allegedly used, and to the taking of the money. In this connection, he refers to testimony of Johnson to the effect that defendant slugged him with something hard that made a sharp knock, but Johnson did not see the object that was used in slugging him; that he was rendered unconscious and did not see the money taken from his pocket, but discovered that the money was missing after the long ride had ended.

In the present case there was direct evidence that defendant committed the assault. As above stated, Johnson testified that defendant slugged him on the head with something hard that made a sharp knock and rendered him unconscious, that the injuries he received from the slugging required stitching in two places, and that his jaw was swollen and his false teeth were broken. That testimony may properly be classified as direct evidence that the assault was with a dangerous or deadly weapon. In *People* v. *Malbrough*, 55 Cal.2d 249 [10 Cal.Rptr. 632, 359 P.2d 30], wherein defendant was convicted of robbery, police officers saw the defendant and another person struggling with the victim, saw defendant drop or throw him to the sidewalk, and saw the other person put his hands in the victim's pockets. It was said therein: "It is the general rule that a trial court is not required to instruct on the rules of law applicable to circumstantial evidence where the alleged circumstantial evidence is incidental to, and corroborative of, direct evidence. . . . It is clear that the evidence in the present case was primarily direct evidence. The evidence of guilt given by eyewitnesses to the crime was complete and convincing. Therefore, the above stated rule is applicable, and the court was not required to give, on its own motion, an instruction on circumstantial evidence."

In the present case the matters of the intent and the taking of the money were based upon circumstantial evidence, and were incidental to the direct evidence which connected the defendant with the crime. An instruction on circumstantial evidence was not requested herein. The court was not required to give, on its own motion, such an instruction.

Appellant contends further that the court erred in failing to instruct the jury that it might find him guilty of the lesser included offense of assault. He also asserts that the court

errcd in not giving an instruction on the ''reasonable doubt'' rule pertaining to the degrees of the offense charged and to the lesser included offenses. In cases cited by him in support of these contentions, requested instructions on such matters had been refused. In the present case such instructions had not been requested. In *People* v. *Dozier*, 35 Cal. App.2d 49, 60 [94 P.2d 598], it was said: ''Among those matters necessitating a specific request for instruction on the part of a defendant is an instruction as to lesser degrees of the offense charged. The court is not required to give such instruction, unless expressly requested, and in the absence of such request, defendant cannot complain of the failure to give the same.'' ██ Likewise, since defendant did not request an instruction on ''reasonable doubt'' in the matter of degree of the crime charged, he cannot complain because such an instruction was not given. (See *People* v. *Arbaugh*, 82 Cal.App.2d 971, 989 [187 P.2d 866].) ██ It was defendant's contention at the trial that he did not take any money from Johnson, nor assault him in any manner. These contentions are not sustainable.

██ Appellant also contends that the court erred in not giving an instruction on the subject of self-defense. He had testified to the effect that after Johnson had hit him with the wrench and caused the car to run against the hydrant, they wrestled outside the car, and defendant took the wrench from Johnson and hit him with it. Self-defense is not, of course, a recognized defense to a charge of robbery. Defendant's asserted defense was a denial of that charge. His testimony to the effect that he wrested the wrench from Johnson and hit him with it indicates that, after having taken the wrench from Johnson, there was no basis for then defending himself by hitting Johnson with the wrench. That testimony was only an incidental or small part of his total denial of the prosecution's case. In any event, if he desired to have the court consider the giving of an instruction relative to his theory of self-defense against an alleged assault upon him by Johnson, and limited to that· theory, he should have requested such an instruction. The court did not err in not giving an instruction on self-defense.

██ Appellant also contends that the court erred in giving the following instruction: To constitute a robbery as being one of first degree because the person committing it is armed with a dangerous or deadly weapon, it is not necessary that such weapon be used; and the degree of the crime is the same

whether or not the weapon is concealed from view.'' He argues that, even though the instruction was a correct statement of legal principles, the giving of it was not warranted by the evidence and could have misled the jury; that the evidence of the prosecution and the defense was predicated on ''use'' of the wrench as a weapon, rather than upon ''disuse'' or mere possession or concealment of it. He asserts that under such instruction the jury might have believed that, even if Johnson had been struck with something other than the wrench (i.e., something less than a deadly or dangerous weapon), the defendant was nevertheless guilty of first degree robbery because he was carrying the wrench (a deadly or dangerous weapon) in the back seat of the car. Under the evidence herein, the instruction should not have been given, but the giving of it was not prejudicial. The evidence was that the wrench was used. There was no implication in the evidence that the prosecution's theory as to the degree of the crime was based upon nonuse or concealment of the wrench or other deadly or dangerous weapon.

The judgment is affirmed. The appeal from the order denying the motion for a new trial is dismissed.

Fourt, J., and Lillie, J., concurred.