[Crim. No. 234.   Fifth Dist.   Aug. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. KEITH NORMAN CRAWFORD, Defendant and Appellant.

---

*Assigned by the Chairman of the Judicial Council.

Keith Norman Crawford, in pro. per., and John D. Chinello, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., Philip R. Birney, and Charles G. Warner, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Appellant, after jury trial, was found guilty of robbery in the first degree in violation of section 211 and 211a of the Penal Code. Appellant was also charged with three prior convictions which he admitted. The trial judge denied his application for probation, and appellant was sentenced to the state prison for the term prescribed by law. This appeal followed.

At approximately 1:30 p.m. on July 8, 1965, two men (both Negroes) entered Kaundart's Market, a small grocery store located in Fresno County. At the time proprietors Ernest Kaundart and his wife were inside the store, and Mr. Kaundart was assisting some children at the end of the counter. One of the two men was carrying a gun which appeared to be a "sawed off rifle." The man with the gun (later identified by Kaundart as Johnny Carter) ordered Kaundart to "empty the till" and to "put it on the counter." The other man (whom Kaundart could not later identify) stood by while the robbery was perpetrated. The two men then took the money and went out of the store. After the two robbers had left the store Kaundart called the sheriff, and when the call was completed he and the others also left the store. Outside they saw a green 1959 Pontiac occupied by three Negroes come around the corner, apparently from the direction in which the robbers had fled, and drive away. The police arrived in approximately 20 minutes and during the course of the investigation took plaster casts of tire tracks left on the street in front of the store by a 1959 green Pontiac automobile.

Shortly before the robbery Levy Harris, who was sitting in a picnic area near the market eating his lunch, observed a green 1959 Pontiac occupied by three Negroes drive up and park in front of the store. He saw appellant, who was driving the car, get out and then get back into the car and turn it around so that it was facing south. Appellant then got out of the car a second time and walked toward the Kaundart store. The motor remained running at all times. In the meantime one of the other occupants also got out of the car and walked toward the store. The second man turned around, walked back to the automobile and then again proceeded back toward the store, this time with a "rifle" partially concealed under his coat. Both men then entered the store.

Appellant was arrested on the evening of July 8, 1966, at approximately 8 p.m. At the time of his arrest he was driving a green 1959 Pontiac automobile which matched the description of the automobile used in the robbery earlier that day.

After the arrest the automobile was taken to the police garage where it was subsequently discovered that it belonged to Robert Mason who had loaned it to appellant on July 5, 1965. It was also subsequently discovered that its tire marks matched the tire marks of the automobile which had been used in the robbery. On July 17, 1965, Mr. Mason was taken to the storage garage where the automobile was impounded. In the presence of a deputy sheriff, Mason then entered the car trunk through the back seat where he found a shotgun with the barrel sawed off. This weapon did not belong to Mason.

Appellant's first contention is that his arrest was illegal because at the time of the arrest the arresting officer did not have reasonable grounds to believe that he had committed a felony. He apparently asserts that we should reverse the judgment of conviction for this if for no other reason. However, from the facts recited it is obvious that this contention is entirely without merit. ■ Moreover, appellant raised no objection at the trial to the legality of his arrest, and he is therefore precluded from raising the issue for the first time on appeal (*People* v. *Rivera*, 202 Cal.App.2d 839 [21 Cal.Rptr. 182]). In any event, there is no indication that incriminating statements were taken or other incriminating evidence was abduced as a result of the arrest.[1] Thus, at best appellant is complaining of an unlawful arrest which occurred after the crime had been committed. ■ It is the rule that a person does not gain immunity from punishment for an offense for which he was unlawfully arrested (*People* v. *Gaines*, 247 Cal. App.2d 141 [55 Cal.Rptr. 283]).

■ Appellant next contends that he was deprived of effective counsel at the preliminary hearing and at the arraignment. Specifically, he claims that his counsel did not see fit to present two crucial defenses at the preliminary hearing. This contention is also without merit. It is generally agreed that it is not good strategy to present a defense at a preliminary hearing because the prosecution is only required to show probable cause in order to bind a defendant over for trial. Moreover, no prejudice could have resulted to appellant by his counsel's failure to present a defense at the preliminary hearing. It is manifest that the prosecution had sufficient evidence to establish probable cause in order to bind appellant over for trial, and appellant had full opportunity to present his defenses during the trial.

---

[1]Although the automobile which defendant was driving was impounded, it did not belong to him and it was subsequently searched by the owner, Mr. Mason, in the presence of a deputy sheriff.

Appellant's remaining contentions are that there is insufficient evidence to justify the verdict, and that during the trial errors at law occurred which prejudiced the appellant and resulted in a miscarriage of justice. These alleged errors include the following: (1) the court erroneously refused and failed to give certain instructions to the jury, (2) the court erred in its interpretation of the instructions relating to an accomplice, (3) the court erroneously excluded evidence which should have been presented to the jury, (4) the prosecuting attorney was guilty of prejudicial misconduct, and (5) the court erred in modifying the verdict from a lesser to a higher degree of the crime charged. We shall consider first the alleged errors.

(1) ▆▆▆ In asserting that the trial judge erroneously refused to give certain instructions to the jury, appellant has reference to the refusal to give the standard jury instruction on circumstantial evidence (CALJIC Nos. 26, 27 and 28). The main thrust of his argument is that Kaundart, the victim of the robbery, did not (and apparently could not) identify appellant as one of the men who robbed him. In other words, the identity of appellant was made by Levy Harris who did not witness the robbery itself and from this appellant concludes that there was no direct evidence connecting him with the crime.

It is of course the rule that where the prosecution relies in whole or in substantial part upon circumstantial evidence to prove its case the court should give instructions on circumstantial evidence, particularly when requested to do so by the defendant as was true in this case (*People* v. *Pedesclaux*, 156 Cal.App.2d 174 [319 P.2d 93]). It is also the rule, however, that where the prosecution relies primarily on direct evidence, and where the circumstantial evidence is only incidental and corroborative, the instructions requested by appellant are not required (*People* v. *Downer*, 57 Cal.2d 800 [22 Cal.Rptr. 347, 372 P.2d 107]; *People* v. *Malbrough*, 55 Cal.2d 249 [10 Cal. Rptr. 632, 359 P.2d 30]).

▆▆▆ Direct evidence is defined in the California Evidence Code, section 410, as follows: ". . . 'direct evidence' means evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact." On the other hand, circumstantial evidence has been defined by decisional law as follows (*People* v. *Goldstein*, 139 Cal.App.2d 146, 152-153 [293 P.2d 495]): "Circumstantial evidence is that which is applied to the principal

fact, indirectly, or through the medium of other facts, from which the principal fact is inferred. The characteristics of circumstantial evidence, as distinguished from that which is direct, are, first, the existence and presentation of one or more evidentiary facts; and second, a process of inference, by which these facts are so connected with the facts sought, as to tend to produce a persuasion of its truth.'' Moreover, the line of demarcation between direct evidence and circumstantial evidence is sometimes a fine one and a matter of degree. For example, in *People* v. *Costa,* 218 Cal.App.2d 310, 315 [32 Cal. Rptr. 374], the victim of a robbery had not seen the object which was used to hit him. In holding that there was direct evidence that the robbery had been committed with a dangerous or deadly weapon the court at page 315 of the opinion said: ''In the present case there was direct evidence that defendant committed the assault. As above stated, Johnson testified that defendant slugged him on the head with something hard that made a sharp knock and rendered him unconscious, that the injuries he received from the slugging required stitching in two places, and that his jaw was swollen and his false teeth were broken. That testimony may properly be classified as direct evidence that the assault was with a dangerous or deadly weapon. In *People* v. *Malbrough,* 55 Cal.2d 249 [10 Cal.Rptr. 632, 359 P.2d 30], wherein defendant was convicted of robbery, police officers saw the defendant and another person struggling with the victim, saw defendant drop or throw him to the sidewalk, and saw the other person put his hands in the victim's pockets. It was said therein: 'It is the general rule that a trial court is not required to instruct on the rules of law applicable to circumstantial evidence where the alleged circumstantial evidence is incidental to, and corroborative of, direct evidence. . . . It is clear that the evidence in the present case was primarily direct evidence. The evidence of guilt given by eyewitnesses to the crime was complete and convincing.''

Thus, we must decide whether the respondent's case was based entirely or in substantial part on circumstantial evidence as appellant contends, or whether the circumstantial evidence is only incidental and corroborative as respondent asserts.

In order to convict appellant of robbery in the first degree as charged in the information, respondent first had to prove that a robbery had been committed with a dangerous or deadly weapon. This it did by direct evidence through the

testimony of Mr. Kaundart. He testified that the robbery was perpetrated by two Negro men who entered the store while he was waiting on some children, and that one of the men whom he later identified was carrying a weapon which appeared to be a "sawed off rifle." Second, respondent had to prove that appellant was one of the robbers who committed the robbery. This it did by direct evidence through the combined testimony of Mr. Harris and Mr. Kaundart. Harris identified appellant as the Negro who drove the car which was used in the robbery, and who walked into the store with the second Negro who was carrying a gun shortly before the robbery occurred. Although it is true that Harris did not actually see appellant commit the robbery, he nevertheless supplied the missing link to Mr. Kaundart's testimony by clear, convincing and direct evidence. In other words, the identity of the two Negroes who committed the robbery was established by direct evidence through the testimony of Mr. Kaundart (as to the Negro who was carrying the gun), and through the testimony of Mr. Harris (as to the Negro who was not carrying the gun). Finally, the respondent had to prove specific intent to commit the robbery, and this it did by direct evidence partially through the testimony of Mr. Kaundart who described the robbery, and partially through the testimony of appellant's brother-in-law, Charles Lee House. House testified that he was the third occupant (the one who remained in the car) of the automobile used in the robbery, and that before arriving at Kaundart's Market appellant had said to Johnny Carter, "I guess I go pick up his change," and Carter responded, "Yes, I guess we can by now." ▆▆ Consequently, it is patently clear that the respondent's case rested primarily on direct evidence, and that the circumstantial evidence relating to the tire marks found at the scene of the crime and the fact that appellant was arrested while driving a 1959 Pontiac, with a sawed off shotgun hidden in the trunk, was incidental and corroborative only. Accordingly, we conclude that the court did not commit prejudicial error when it refused to give the proffered instructions.

Appellant also complains that the court did not instruct on the lesser and included offense of robbery in the second degree. The court, however, instructed the jury on the difference between robbery in the first degree and robbery in the second degree; then, the court explained that if the jury found that either appellant or his accomplice was armed with a deadly weapon it would be robbery in the first degree and

that it was the jury's duty to determine the degree of the crime (the court gave CALJIC Nos. 210, 210-A, 210-B, 210-C and 210-F). Thus, it is apparent that this contention is contradicted by the record.

(2) ■ Appellant does not contend that the court did not adequately instruct the jury on the law relating to the testimony of an accomplice (the court gave CALJIC instructions No. 821, 822 and 829). Briefly, the court instructed the jury that the testimony of an accomplice must be viewed with caution and must be corroborated, and that this corroboration must connect the defendant with the crime. However, after reading the standard jury instructions the trial judge made the following remark: ''Now, I don't want you to misinterpret this. In this case, there is evidence other than the accomplice. It depends upon which evidence, which testimony you give credit to. If you were to find that the only evidence in the case that connects the defendant with the crime is the testimony of the accomplice, then you would have to determine whether or not it's corroborated by other additional evidence.'' Appellant's only complaint, therefore, is that the trial judge's epilogue to the standard instructions confused the jury, for it indicated that they could still find appellant guilty even though the testimony of the accomplice was the only evidence connecting him to the crime.

We are inclined to agree with appellant's conclusion that the court's extemporaneous statement to the jury is somewhat ambiguous. We do not believe, however, as appellant asserts, that it told the jury they could convict on the uncorroborated testimony of the accomplice alone. Paradoxically, the court seemed to tell the jury that, if the *only* evidence in the case that connected defendant with the crime was the testimony of the accomplice, then they would have to determine whether it was corroborated by ''other additional evidence.''[2] Obviously, this other additional evidence would have to connect appellant to the crime, and it follows that the court's remarks, when considered in light of the instructions which the judge correctly read, should not have unduly misled the jury. Moreover, there was substantial direct and circumstantial evidence connecting appellant to the crime, in addi-

---

[2]The trial judge probably meant to say that appellant had been identified as one of the robbers by two witnesses, Levy Harris and appellant's accomplice Charles House, and that if the jury believed only the testimony of the accomplice on the identity they would also have to find that this testimony was corroborated by other testimony connecting appellant to the crime.

tion to the testimony of his accomplice. In fact, not only is
this other evidence extremely persuasive, but it is also suffi-
cient to sustain a conviction without the testimony of the
accomplice. Thus, if anything, it was the testimony of the
accomplice which was incidental and corroborative. Accord-
ingly, we conclude that the trial judge's extemporaneous
remarks (although redundant and unnecessary) were not
prejudicial and that it is unlikely that a different result more
favorable to defendant would have been reached by the jury
if these remarks had been omitted (*People* v. *Watson,* 46
Cal.2d 818 [299 P.2d 243]).[3]

(3) ■ In complaining that his cross-examination of a
prosecution witness was unduly restricted by the trial court,
appellant refers to the court's refusal to permit him to cross-
examine the witness Charles Lee House in the presence of the
jury on the alleged arrest of House's wife. In this connection,
the record indicates that after this witness (who also had been
arrested for robbery and was lodged in jail) testified for the
prosecution, he was thoroughly cross-examined on his motive
for testifying and such cross-examination was liberally
allowed. Later the witness was recalled to the stand by appel-
lant's counsel and asked if it was not a fact that his wife had
been arrested on the previous night. The trial judge then
stated that the question was immaterial and requested an offer
of proof out of the presence of the jury. When House consis-
tently denied knowledge of the alleged arrest, no further
questions on the subject were permitted in the presence of the
jury.

Standing alone the arrest of the witness' wife was imma-
terial to the issues of the case. However, we agree with appel-
lant's position that the arrest would have been material to
impeach the witness (by showing a motive for testifying
against appellant) if it also could be shown by direct or
circumstantial evidence that the witness had knowledge of the
arrest. In other words, it is settled that a defendant may
inquire into the motives of the prosecution's witnesses who
testify against him (*People* v. *Vanderburg,* 184 Cal.App.2d
33 [7 Cal.Rptr. 287]). However, although invited by the court
to do so, the defendant failed to offer any proof that the

[3]Since we do not here deal with a federal constitutional question, we
are not compelled to follow the rule enunciated by the United States
Supreme Court in *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705,
87 S.Ct. 824].

witness knew or could have known of his wife's arrest. To the contrary, despite the prosecutor's disclaimer of any knowledge of the arrest, appellant even failed to offer proof that the witness' wife had in fact been arrested. Under these circumstances appellant cannot now successfully assert that he was prejudiced.

(4) ■■ Appellant's defense was an alibi, and although he did not testify at his trial he nevertheless called several witnesses to show that he was elsewhere when the crime was committed. Thus, in charging the prosecutor with prejudicial misconduct, appellant first complains that the prosecutor referred to appellant's case as a "Perry Mason type case" when discussing appellant's alibi during argument to the jury.

The term "misconduct" implies a dishonest act or an attempt to persuade the court and jury by use of deceptive or reprehensible methods (*People* v. *Baker,* 207 Cal.App.2d 717 [24 Cal.Rptr. 691]). However, we find nothing dishonest, deceptive or reprehensible in the prosecutor's reference to Perry Mason. To the contrary, this fictional character is depicted as a man of integrity, and his clients are seldom if ever guilty. Moreover, with two exceptions, the burden is on a defendant who claims that the prosecutor was guilty of misconduct to object, and to seek a cure through an appropriate admonition. Hence, if he is silent or merely objects or makes the assignment of misconduct but does not request an admonition, he cannot complain on appeal (Witkin, Cal. Criminal Procedure (1963) § 748, p. 22). One exception is where the case is closely balanced and there is a grave doubt of defendant's guilt and the acts of misconduct are such as to contribute materially to the verdict; the other exception is where the act done or the remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court (*People* v. *Lyons,* 50 Cal.2d 245 [324 P.2d 556]). Since appellant failed to object to the prosecutor's remark or request an admonition, he cannot now be heard to complain. Clearly, any harm which might have possibly resulted from the remark could have been cured by an appropriate admonition.

■■ Appellant's next complaint is far more serious, for it relates to the following remarks which were also made by the prosecutor while discussing appellant's alibi: "Now, finally, I ask you to consider one other thing, and that is that this happened on July 8th. The defendant went into custody. He

was talked to by Sergeant Conway. He has had tremendous opportunity, opportunity to give his alibi, and yet he never did to the very officer who was investigating the case, the man who could go out and talk to these relatives, a day or two after it happened when their memories would be fresh, when they would be able to remember more exactly just what happened the day before. The defendant, on the night of the 8th, could have told Sergeant Conway at 1:30 or so in the afternoon, 'I was out at my aunt's. There is lots of people that can say that I was there.' He could have gone out and talked to them. He didn't come up with this thing until recently. Now, put yourself in his position. You have been picked up and charged with armed robbery, and the circumstances are against you because you are in the type of car that the eye witnesses have seen in the robbery. It hasn't yet been developed that the tire tracks are the same, but these circumstances are tough. You are a Negro. The man who did the robbery was a Negro. So, what are you going to do? You are going to say, 'Listen, I was with some friends at that time. Go talk to them.' You are not going to wait around and take the chance that maybe a jury will believe this thing. You are going to try to convince the authorities themselves, and yet the defendant did not do this. He is playing the odds with you that the testimony as to the times will be confusing enough to you, either one of you or all of you, that you will let him off, and I say to you that this testimony does not show beyond all reasonable doubt that the defendant was not at the grocery store. The prosecution's testimony that he is there is uncontradicted. It is uncontradicted directly by any eye witness. The only thing we have heard from the defendant is this roundabout story from these relatives.''

We conclude that these remarks were not only improper but reprehensible when considered in light of the cases already decided by the United States Supreme Court and by the appellate courts of this state at the time of appellant's trial. For example, in stating that "the only thing we have heard from the defendant is this roundabout story from these relatives,'' the prosecutor was indirectly commenting on defendant's failure to testify contrary to the rule articulated by the United States Supreme Court in *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. In other words, this remark was not a legitimate comment directed to a weakness or flaw in the evidence itself. Rather, it was an obvious attempt to direct the jury's attention to the fact that appel-

lant had not testified on his own behalf.[4] Moreover, the prosecutor also commented on defendant's failure to disclose his alibi when he was arrested and charged with the robbery, and similar argument was condemned by Justice Stone (while speaking for the Court of Appeal, 4th District) several years prior to appellant's trial (*People* v. *Reese,* 220 Cal.App.2d 143, 146 [33 Cal.Rptr. 561]). In fact, such argument is clearly prohibited by the more recent decision of the California Supreme Court in *People* v. *Cockrell,* 63 Cal.2d 659 [47 Cal. Rptr. 788, 408 P.2d 116]. In *Cockrell, supra,* at page 669, which was also decided prior to appellant's trial, the court held that "the rationale of *Griffin* implicitly proscribes drawing an inference adverse to the defendant from his failure to reply to an accusatory statement if the defendant was asserting his constitutional privilege against self-incrimination," and that it is not necessary to make an express claim of privilege since silence alone makes the accusation inadmissible.

Although we conclude that the prosecutor's remarks constitute misconduct, we also conclude that automatic reversal is not required (*People* v. *Ross,* 67 Cal.2d 64 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Cockrell, supra,* 63 Cal.2d 659; *People* v. *Lyons,* 50 Cal.2d 245 [324 P.2d 556]).[5] To the contrary, we conclude that the cumulative effect of all the evidence (including appellant's own evidence on his defense of alibi) is so convincing that there is no reasonable possibility that a result more favorable to appellant would have been reached by the jury if the prosecutor's objectionable remarks had not been made (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]).

First, appellant was identified by a disinterested witness as the man who was driving the green 1959 Pontiac automobile which was used in the robbery. This witness also testified that he saw appellant go into the grocery store shortly before the robbery in the company of a second Negro who was carrying a "rifle" partially hidden under his coat. Finally, he testified that he saw appellant and the second Negro come out of the store shortly after the robbery and drive away in the company of a third Negro companion.

Second, Mr. Kaundart, the victim of the robbery, testified

---

[4]See *Griffin* v. *California. supra,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]; and *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] for similar examples.

[5]Appellant did not object or make an assignment of misconduct, nor did he request an admonition.

that he was robbed by two Negroes, and that one of the Negroes (who he later identified as Johnny Carter) was holding a "sawed off rifle." He stated that shortly after the robbery he saw three Negroes drive away in a green 1959 Pontiac automobile.

Third, Charles Lee House, appellant's own brother-in-law, testified that he was the third occupant of the green 1959 Pontiac automobile and that he received $20 for his participation in the robbery. He stated that he had driven to the store with appellant and Johnny Carter and had heard appellant say to Carter, "I guess I go pick up his change." He also testified that he heard appellant ask Carter to count the money after the robbery had been committed.

Fourth, when appellant was arrested on the evening of the robbery he was driving a green 1959 Pontiac automobile. This automobile matched the description of the car used in the robbery, and its tires left tire marks similar to those found at the scene of the robbery. Moreover, a sawed off shotgun was found in its trunk.

Fifth, appellant's own alibi connects him to the crime. This is so because it places him with his two accomplices (one self-confessed and the other indentified by the robbery victim) within 20 minutes after the crime was committed, and yet even if it is assumed that appellant's witnesses told the truth it still would have been possible for appellant to have committed the robbery. In other words, appellant's alibi was that he and his two companions, Johnny Carter and Charles Lee House, were at the Johnson home at 2969 South Clara Street, Fresno, when the crime was committed. Accordingly, he attempted to show that his cousin, Jimmy Lee Johnson, had been bitten by a dog, which had been reported to the police at 1:37 p.m. (the robbery was reported at 1:36 p.m.). He then attempted to show that he had been at the Johnson home at least 20 minutes before the police arrived in answer to the dog bite call (appellant's cousin also testified that Johnny Carter and Charles Lee House were there). However, the testimony of appellant's witnesses as to the essential time sequences was highly conjectural and subject to wide latitudes one way or the other. For example, the police officer who made the investigation of the dog bite did not remember the exact time he arrived at the Johnson residence. In fact, he testified that even though the dog bite had been reported at headquarters at 1:37 p.m. from five to ten minutes before his unit received the call, and an additional five to fifteen minutes before he

arrived at the Johnson house, depending on his location when the call was received. Moreover, although appellant's remaining witnesses (mostly relatives) testified that appellant had been at the Johnson home between fifteen and twenty minutes before the police arrived, it is clear that they did not know of their own knowledge at what time the police arrived and even admitted that it was possible that appellant was there only five to ten minutes. Since Kaundart's Market is located at 3466 South Valentine Avenue, Fresno, a distance of between six and seven miles from the Johnson home (a fact of which we take judicial notice), it is obvious that appellant could have committed the crime and still have been at the Johnson home from five to fifteen minutes before the police arrived to investigate the dog bite.

(5)    ▮▮▮    Appellant's contention that the trial judge improperly "modified" the verdict from a lesser to a higher degree of crime is contradicted by the record. The record indicates that when the jury returned its verdict it read that they had found appellant guilty of robbery in the first degree, but that he "was not armed with a deadly weapon."[6] The judge then pointed out the apparent inconsistency to the foreman of the jury, and the following transpired:

"The question is, did the jury find the defendant was guilty of Robbery in the First Degree? The necessary finding by implication is that he was armed with a deadly weapon. Now, as I instructed, it is not necessary that he personally have the weapon in his hand, but that one of the persons that was found to be a principal would be armed. Was that the jury's finding?

"MR. DOBSON: Yes.

"THE COURT: That this weapon was a deadly weapon?

"MR. DOBSON: Yes, sir.

"THE COURT: Well, then, will you correct that phase of it just so there will be no doubt about it, then?"

The verdict as corrected was read to the jury, and the judge then asked the jurors if it was their intention to find appellant guilty as an aider and abettor in the armed robbery.

---

[6]The form verdict which the jury first returned read as follows:

"We the jury . . . fix the degree thereof as Robbery of the   First   or
 (First)
            and find that the defendant, KEITH NORMAN CRAWFORD
(Second)
                    or   was not   armed with a deadly weapon."
                       (was not)

They responded affirmatively, and when the jury was polled all jurors stated that this was their intended verdict.

It is clear from the evidence that appellant was not personally armed with a deadly weapon when the robbery was committed. According to the evidence, it was his accomplice Johnny Carter who was armed with the ''sawed off rifle.'' It is therefore evident that when the jury first returned their verdict they had understood the judge's instruction concerning the degree of the offense committed by appellant as the accomplice of Johnny Carter who was armed with a ''sawed off rifle.'' They did not, however, differentiate between a person who is personally armed and one who is armed as a matter of law, and thus stated in the verdict that appellant was not armed (meaning that he was not personally armed). However, it is evident that they intended to find appellant guilty of robbery in the first degree. Hence, the correction which was subsequently made by the foreman of the jury (and not by the court as appellant asserts), stating that appellant was armed (meaning that he was armed as a matter of law) was a correction as to form but not substance. In *People* v. *Fisher*, 86 Cal.App.2d 24, 32 [194 P.2d 116], the court said: ''When informalities in a verdict amount to mere matters of form, the court, instead of directing a jury to retire for that purpose, may of its own motion order the verdict to be corrected.'' And in *People* v. *Camarillo*, 225 Cal.App.2d 127, 134 [37 Cal.Rptr. 178], the court stated: '' 'There is no good reason why the verdict of a jury should not have a reasonable construction and be given effect according to its manifest intention.' '' (*People* v. *Holmes*, 118 Cal. 444, 448 [50 P. 675].)

In view of our comments on appellant's charge of misconduct, it is apparent that we also conclude that his contention that the evidence is insufficient to justify the verdict is devoid of merit.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 11, 1967. Peters, J., was of the opinion that the petition should be granted.