Filed 10/6/15  P. v. Clark CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL FRANCIS CLARK, JR.,<br><br>　　　　Defendant and Appellant. | A139279<br><br>(Contra Costa County<br>Super. Ct. No. 51304690) |

Defendant Michael Francis Clark, Jr., appeals from his battery, assault, and false imprisonment convictions.  He asserts the trial court should have admitted evidence his victim, a woman he had been intimate with, had once been arrested for domestic violence towards him.  He also asserts the trial court improperly limited closing argument regarding the knife found in his camper and failed to properly instruct the jury on circumstantial evidence.  We affirm.

### BACKGROUND

We summarize only the facts relevant to the issues on appeal.  Tina Sistrunk, the victim, provided the main evidence against defendant at trial.  Sistrunk, in California, met defendant, then in Minnesota, online.  They chatted and formed a friendship.  On learning defendant had never been to California, Sistrunk told him he was welcome to visit and crash, for a week, on the couch in the apartment she was about to get.  Defendant immediately accepted the offer and drove out with his truck and camper.  Within a week of defendant's arrival, the two became physically intimate but, according to Sistrunk, they were not in a romantic dating relationship.

Sistrunk and defendant were, at first, living out of the camper, and then were living together in Sistrunk's new apartment in Concord.  Defendant stayed in the apartment for about a month with Sistrunk, and then a second month while she was not there.  Although the two

1

continued to have sex during these two months, their relationship faltered in part due to defendant's belief there was a real dating relationship and defendant's "weird and paranoid" behavior. After that, Sistrunk "got him to leave."

Some days later, on February 2, 2013, defendant and Sistrunk met up again. That day, defendant returned to Sistrunk's apartment and asked to shower. Sistrunk let him in and then went off with a friend, expecting to find him gone upon her return. But when she came back, defendant was still there and was cooking in Sistrunk's kitchen. Defendant wanted to know why he and Sistrunk could not have a romantic relationship. Sistrunk explained she still did not want one, and this angered defendant.

Defendant then pushed against Sistrunk, grabbed her neck and pinched her Adam's apple, and held her against the back of her sofa. Sistrunk "freaked out" and told him to leave because she was calling the police. Defendant left.

Later that day, Sistrunk went out to the liquor store across the street from her apartment. She saw defendant. Defendant approached and again asked why they could not be together. Defendant invited her back to his camper to share beers. Sistrunk made it clear she was not interested, and would not be interested, in a relationship, but went with defendant.

At the camper, defendant again spoke about his interest in a relationship and Sistrunk, growing weary of the topic, again rebuffed him. After 10 to 15 minutes, Sistrunk got up to leave. Defendant "grabbed [her] left shoulder and in his right hand put a knife to [her] throat." Defendant pulled her back up against his chest. She could feel the "jagged edge to [her] throat"—the pressure from a serrated knife. The attack surprised her. Sistrunk did not "see where he pulled [the] knife from," nor did she have a chance to look down and see the knife as it was pressed against her throat.

Sistrunk resisted, and at first defendant only applied more pressure to keep her in place. At last, Sistrunk got a thumb between the knife and her throat and was also able to bite down on one of defendant's fingers. Photographic evidence confirmed cuts to Sistrunk's left thumb and scratches to her neck. A police officer also testified to seeing these injuries shortly after the incident. The bite caused defendant to stop, and Sistrunk ran out of the camper after pausing to grab her things. Defendant also left the camper.

Both Sistrunk and defendant then encountered a police officer, Officer Riche, the only other witness to testify at trial. He happened to be on traffic patrol 200 yards from where the

2

camper had been parked. He saw defendant yelling in pain, apparently from the bite—though the bite only required a band aid as treatment. Sistrunk was highly emotional and crying. She told the officer someone had just tried to kill her and she was looking over her shoulder in fear of defendant. The officer later inspected the camper and located a partially open, serrated folding knife on the floor.

The Contra Costa County District Attorney charged defendant with misdemeanor battery (Pen. Code, § 242),[1] felony assault with a deadly weapon (a knife) (§ 245, subd. (a)(1), and false imprisonment by violence (§§ 236, 237, subd. (a)). In connection with the false imprisonment charge, the district attorney alleged an enhancement for personally using the knife.

The jury found defendant guilty as charged.

## DISCUSSION

### *Evidence of Victim's Prior Domestic Violence Arrest*

Before trial, the people moved to exclude evidence of a November 2012 domestic violence incident between Sistrunk and defendant which resulted in Sistrunk's arrest. At the preliminary hearing (before a different judge), Sistrunk had admitted to shouting profane threats at defendant that night in November, and the December 2013 probation report, prepared after trial, stated defendant reported being hit and "as it was believed at that time that the current victim was the perpetrator, she was arrested."

The trial court stated it was taking the prosecution's motion under submission, but if the prior incident became "relevant in any way, then this information can come in." Defense counsel generically asserted the incident was relevant to Sistrunk's "bias, motivation, and credibility." The court stated that oral request was "denied for now" but reiterated the matter was "taken under submission." No details of the incident were provided to the trial court at the motion hearing, and defense counsel never made any further attempt to have evidence of the incident admitted.

At trial, Sistrunk testified she first met defendant online "probably about, I don't know, a month before he came out here." The prosecutor, after eliciting details about the online portion of the relationship, misstated Sistrunk's testimony and asked, "you previously testified that [defendant] showed up [in California] about a month before February 2nd; is that right?"

---

[1] Further statutory references are to the Penal Code unless noted.

3

Sistrunk replied "[y]eah." The November altercation was evidence defendant had actually been in California a bit longer.

Defendant now contends evidence of the November 2012 assault should have been admitted because it (1) impeached Sistrunk's statement agreeing with the prosecutor that defendant arrived in California only a month before February 2, 2013,[2] thereby casting doubt on Sistrunk's overall character for honesty; and (2) provided a motive for Sistrunk to lie about the instant crime—that is, "to avoid potential prosecution."

As an initial matter, defendant has forfeited review of this evidentiary issue. The trial court stated it was taking the exclusion of the November altercation "under submission" and would consider the matter further in the context of trial. Without a ruling on the motion, defendant " 'was obligated to press for such a ruling . . . until he obtained one. He failed to do so, thus depriving the trial court of the opportunity to correct potential error.' " (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171; *People v. Holloway* (2004) 33 Cal.4th 96, 133 (*Holloway*) ["A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself."]; cf. *People v. Keenan* (1988) 46 Cal.3d 478, 513 ["Though it expressed a tentative opinion" against defendant, "the court specifically refused to rule on matters of cross-examination before they arose"—this was not an adverse ruling subject to review.].)

In addition, defendant's generic mention of "bias" never informed the trial court of his theories of relevance. Certainly, defendant could not have articulated his impeachment theory at the pretrial motion hearing, as Sistrunk had not even testified yet. (*Holloway*, *supra*, 33 Cal.4th at p. 133 ["Neither of these bases of relevance was raised or discussed in the hearing on defendant's motion in limine."]; see also *People v. Partida* (2005) 37 Cal.4th 428, 435 ["A party cannot argue the court erred in failing to conduct an analysis [on admissibility] it was not asked to conduct."].) For this reason, as well, it was incumbent on defendant to raise the issue at trial when it arose.

---

[2] Defendant also states Sistrunk "perjured" herself at the preliminary hearing by testifying defendant arrived in California in January 2013. Defendant offers no cite to the preliminary hearing transcript. Moreover, the preliminary hearing transcript contains testimony about the prior altercation, including the fact that it took place in November 2012.

4

Even absent forfeiture, the trial court did not abuse its discretion in excluding evidence of the November altercation. "[T]he trial court has wide latitude under state law to exclude evidence offered for impeachment that is collateral and has no relevance to the action" and there are, furthermore, no constitutional concerns "as long as the excluded evidence would not have produced a ' " 'significantly different impression' " ' of the witness's credibility." (*People v. Contreras* (2013) 58 Cal.4th 123, 152.) Impeachment on how long defendant had been in California was entirely collateral and irrelevant to the crimes charged. Furthermore, Sistrunk's error on this point was in response to the prosecutor's vague question in which the prosecutor asserted that defendant had arrived in California "about a month" before the February incident. It is doubtful any impeachment would have left the jury with a significantly different impression of Sistrunk's credibility, particularly given the remainder of her testimony. Nor did the November 2012 altercation provide a significant motive for Sistrunk to lie about defendant's February 2013 conduct to "avoid potential prosecution." She had already been arrested for the November incident. Given all this, and also given that the true nature of the November incident was not at all clear, the trial court was well within its discretion to conclude testimony regarding the November 2012 incident would confuse the jury and distract from the trial, rather than provide significant probative evidence. (Evid. Code, § 352; *People v. Cunningham* (2001) 25 Cal.4th 926, 999.)[3]

### *Closing Argument Regarding Knife*

During trial, there was an odd incident regarding the serrated knife found in defendant's camper. Before Officer Riche testified at trial, he and the two attorneys inspected the knife. Before defense counsel handled the knife, it was in proper working order. But then, when the defense attorney handled and closed it, "the blade fell off of the knife." The officer then put the blade back in with its pin and "pushed it back into place." There was no tightening required. This restored the knife to the condition it was in when the officer found it.

In response to an objection by defense counsel on the prosecution's redirect examination of Riche, the trial court stated: "You broke it. He fixed it. It's okay" and concluded the prosecutor's questioning about defense counsel's handling of the knife was not "misleading."

---

[3] *People v. Minifie* (1996) 13 Cal.4th 1055, 1068, 1070–1071 (*Minifie*), a case defendant cites, is inapposite. *Minifie* concerned whether third party threats are admissible to show self-defense. Defendant has never claimed he acted in self-defense.

Defense counsel pressed the matter no further despite asking a few unrelated questions on re-cross.

At closing argument, however, defense counsel made several statements about this incident. She said the officer testified the "blade fell out of the handle." She also said this was a problem because "that's a loose knife." The trial court then admonished counsel the officer did not say it was a loose knife. Counsel persisted: "I can argue that if the blade fell out of the handle of the knife that meant it was loose." But the court said, "no, you cannot, because you're testifying." Counsel then continued, without interruption or objection, to say "[i]t's a problem if they're trying to tell you that a knife that the blade falls out of the handle is a knife that's held up against her so tight" and "[i]t's a problem that the officer fixed the knife and that's the knife that they want you to take back to the jury room." Counsel concluded: "A knife that a blade falls out of, scratches on the neck when it's supposed to be tight and hard, her thumb getting sliced and blood pouring steadily out and no blood anywhere. These are all reasons to doubt."

On appeal, defendant asserts the trial court blocked him "from arguing . . . the defunct state of the knife" as it related to "whether or not it constituted a dangerous weapon." The record does not support this claim. To begin with, defense counsel *did* tell the jury about the knife blade falling out and argued this made Sistrunk's testimony problematic and created doubt. Further, the trial court ruled only that defense counsel could not say the knife was "loose," and indeed, Officer Riche testified he did not need to do any tightening to fix the knife and it was in working order before defense counsel handled it. Officer Riche's testimony about the knife was not contradicted. Accordingly, there was no error in how the trial court handled closing argument.

### Failure to Instruct on Circumstantial Evidence

At the conclusion of evidence, the parties discussed various jury instructions with the trial court, including instructions related to direct and circumstantial evidence. The court stated it would not give instruction CALCRIM No. 224,[4] regarding circumstantial evidence, because

---

[4] The instruction provides:

"Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence

6

"you only need to give that instruction if a substantial portion of the case rests on circumstantial evidence, which it does not."

Indeed, CALRCRIM No. 224 need only be given "when the prosecution relies substantially on circumstantial evidence to prove guilt." (*People v. McKinnon*, *supra*, 52 Cal.4th at p. 676; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1171.) "Conversely, the instruction need not be given when circumstantial evidence is merely incidental to and corroborative of direct evidence, due to the 'danger of misleading and confusing the jury where the inculpatory evidence consists wholly or largely of direct evidence of the crime.' " (*People v. McKinnon*, *supra*, 52 Cal.4th at p. 676.)

Defendant contends "the only evidence connecting the knife that police discovered on appellant's floor to the assault was circumstantial, as Sistrunk did not actually see the sharp object used in the assault." Defendant glosses over Sistrunk's other testimony, that she felt the serrated edge of a knife pressing tightly against her throat during the attack. This was direct evidence defendant assault her with a deadly weapon. (*People v. Costa* (1963) 218 Cal.App.2d 310, 314–315 [no circumstantial evidence instruction required when "there was direct evidence" of assault: "Johnson testified that defendant slugged him on the head with something hard that made a sharp knock and rendered him unconscious, that the injuries he received from the slugging required stitching in two places, and that his jaw was swollen and his false teeth were broken. That testimony may properly be classified as direct evidence that the assault was with a dangerous or deadly weapon."].) Locating a knife fitting Sistrunk's description in defendant's camper merely corroborated Sistrunk's testimony.

Thus, this is not a case like *People v. Rogers* (2006) 39 Cal.4th 826, 885, in which the circumstantial evidence instruction was appropriate. There, the case against defendant hinged *not* on victim testimony, but on after-the-fact possession of a murder weapon.

Accordingly, the trial court did not err here in refusing to give CALCRIM No. 224.

---

is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." (CALCRIM No. 224.)

It correlates with CALJIC No. 2.01. (See *People v. McKinnon* (2011) 52 Cal.4th 610, 674 & fn. 38, quoting CALJIC No 2.01.)

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.

8